[No. B117237. Second Dist., Div. Three. Aug. 13, 1999.]

WAYNE HANSON, Plaintiff and Appellant, v.
LUCKY STORES, INC., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions deleted are noted by the insertion of the following symbol of omission [[ ]].

**COUNSEL**

Law Offices of Jackson & Jackson, Derek P. Jackson and Gary A. Jackson for Plaintiff and Appellant.

Seyfarth, Shaw, Fairweather & Geraldson, Kenneth D. Sulzer and W. Michael Battle for Defendant and Respondent.

**OPINION**

**ALDRICH, J.—**

### INTRODUCTION

In his wrongful termination action alleging physical-disability discrimination, plaintiff, Wayne Hanson, appeals from the summary judgment entered in favor of his employer, defendant Lucky Stores, Inc. Hanson suffered a hand injury while on the job as a meatcutter and took a series of leaves of absence from work to recuperate. Sixteen months after Hanson sustained his injury, his doctor finally released him to return to work, with physical restrictions against heavy lifting, pulling, pushing and prolonged standing. Lucky offered Hanson an alternate position as a part-time meat clerk. Hanson rejected the offer and Lucky terminated his employment. In his complaint, Hanson seeks damages for, inter alia, discrimination in violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq., hereinafter FEHA),[1] and wrongful termination in violation of public policy. (Cal. Const., art. I, § 8.)

Reviewing the filings in support of and in opposition to the summary judgment motion, we conclude in the unpublished portion of this opinion that Lucky carried its burden by demonstrating that its reason for terminating Hanson's employment was legitimate and not discriminatory. We conclude further, in the published portion of this opinion, that in any event, Lucky provided Hanson with two reasonable accommodations. In opposing the motion, Hanson failed to raise a triable issue of material fact as to Lucky's prima facie showing. Accordingly, we affirm the summary judgment.

---

[1] Hereinafter, all statutory references shall be to the Government Code, unless otherwise noted.

## FACTUAL BACKGROUND

Hanson was a journeyman meatcutter with Lucky. In December 1993, Hanson broke his hand and injured his wrist while at work. Earlier, Hanson had suffered a back injury while on the job.

As a member of the United Food and Commercial Workers Union, Hanson's employment was governed by a collective bargaining agreement (CBA) with Lucky. The CBA provided for up to nine months of leave for an employee injured while on the job.

Hanson took three weeks off from work between December 1993 and January 1994. Hanson then worked until April 19, 1994, when, continuing to feel pain in his hand, he took a leave of absence to undergo therapy. Surgery to fuse Hanson's wrist was performed on December 14, 1994. From the time of the accident, Lucky extended Hanson's leave at least eight times spanning sixteen months.

Hanson's doctor, Jamshid J. Hekmat, M.D., issued a return-to-work order allowing Hanson to work as of May 15, 1995, with the limitation that he was not to engage in "heavy lifting, pulling, pushing with his right hand." In his ensuing permanent and stationary evaluation[2] of Hanson's industrial injury, Dr. Hekmat explained that Hanson had lost 50 percent of the grip and strength in his right arm for any activity, and would have "difficulty with activities involving lifting over 25 pounds, carrying, pushing and pulling at this time." Dr. Hekmat issued an amended report on July 21, 1995, clarifying that Hanson had sustained "multiple work-related injuries" to his wrist and back. While Hanson was capable of returning to work, Dr. Hekmat precluded Hanson from heavy lifting, repeated bending, pulling, pushing and prolonged periods of standing.

Hanson commenced vocational rehabilitation in July 1995, and began considering employment elsewhere. In early August 1995, Lucky offered Hanson the position of a part-time meat clerk[3] at approximately 50 percent of his meatcutter's pay, and with none of the benefits received by full-time union meatcutters. Hanson refused the offer. After Hanson failed to report to work in the meat clerk position, Lucky terminated his employment as of August 31, 1995.

---

[2] " 'A disability is considered permanent after the employee has reached maximum improvement or his condition has been stationary for a reasonable period of time.' " (*Chavira* v. *Workers' Comp. Appeals Bd.* (1991) 235 Cal.App.3d 463, 473 [286 Cal.Rptr. 600].)

[3] Lucky described this position as a part-time meat "wrapper." Hanson disputes that the position was called a meat "wrapper," insisting instead that it was a meat "clerk." No triable issue of *material* fact is raised by this dispute over the title of the position.

Hanson's lawsuit ensued. At issue here are the third and fourth causes of action, in which Hanson alleged his employment was terminated because of his history of work-related injuries and because Lucky perceived him as an individual with a permanent physical disability. Hanson alleged Lucky did not accommodate him to enable him to perform the essential functions of his job. Based on these allegations, Hanson charged his employment termination constituted an unlawful employment practice in violation of FEHA and a wrongful termination in violation of public policy embodied in article I, section 8 of the California Constitution and FEHA.

## PROCEDURAL BACKGROUND

### A. *Lucky's summary judgment motion.*

With the case at issue, Lucky moved for summary judgment on the ground that, there being no issues of material fact, Hanson's third cause of action lacked merit as a matter of law, because, inter alia, (1) Hanson was not denied reasonable accommodation where Lucky (a) extended his leave to allow him to recuperate, and (b) offered him an alternative job in a vacant position; and (2) Hanson cannot demonstrate that Lucky's legitimate business reasons for terminating his employment were pretextual. With respect to the fourth cause of action, Lucky contended that, as a matter of law, Hanson could not demonstrate that any public policy was violated.

In support of its motion, Lucky submitted evidence under the authenticating affidavit of its counsel, showing that Hanson had taken a total of 16 months of medical leave to undergo surgery and therapy, and to recuperate from his injury. The CBA allowed nine months of leave. After expiration of the nine-month period under the CBA, Lucky's representatives testified, Lucky was free to follow its own internal procedures with respect to the employee's leave. In Hanson's case, Lucky extended his leave three times after the initial nine months, for a total of sixteen months or nearly twice that provided for by the CBA. Hanson's doctor cleared him to return to work finally on May 15, 1995.

The CBA provides in article 9, part A, paragraph 2, that where the employee is physically unable to return to the job within nine months, "the employee shall be given *preference* for employment *when a vacancy occurs in a position for which he can qualify* if he applies for reemployment within six (6) months from the expiration of his leave of absence." (Italics added.) At the end of the leave of absence, the CBA further provides, the employee shall be returned to a position "comparable to the one held prior to this leave *provided that the employee is physically able to efficiently perform work*

*comparable to that which he performed prior to such leave of absence.*" (Italics added.) Hanson admits that to perform his job as a meatcutter he must be able to lift heavy carcasses, repeatedly bend, pull, and push heavy objects, and stand for prolonged periods of time.[4] Lucky decided, because of Hanson's doctor's restrictions, it could not return Hanson to his meatcutter job.

Faced with the work restrictions placed on Hanson by his doctor, Lucky's human resources manager for the Southern California region, Bruce Frazier, met with Lucky's workers' compensation supervisor, Diana Sinclare, to ascertain whether Hanson could perform in another position. Frazier and Sinclare reviewed the job descriptions for Lucky and consulted with the vocational and rehabilitation provider, administered through Lucky's worker's compensation insurer, about Hanson's work limitations and the positions available at Lucky. Sinclare testified that in identifying the jobs for which Hanson would qualify, she considered (1) Hanson's restrictions, (2) Hanson's workers' compensation claim, (3) Hanson's expressed desire to continue as a meatcutter, and (4) whether Lucky could modify the meatcutter position. While Sinclare did not discuss Hanson's desires with him, the vocational and rehabilitation provider had "made it very clear" that Hanson wanted to remain in the meat department. After receiving Dr. Hekmat's July 21, 1995, amended permanent and stationary report, Frazier and Sinclare concluded the only available job at Lucky that Hanson could perform was as a part-time meat clerk. Lucky's clerical staff was moving out of California, there was no other work available "within the industry," and no other jobs could be modified because of Hanson's restriction against prolonged standing. Lucky offered Hanson the meat clerk post in early August 1995.

Lucky also demonstrated that Hanson refused this offer. Then, Lucky terminated his employment. The termination letter states, "You were granted a medical leave of absence which expired April 19, 1995. You did not return to work, and no further extension of this leave is available. We must, therefore, consider you as having terminated your employment with Lucky Stores, Inc., and are setting the effective date of the termination of your employment as of August 31, 1995."

B. *Hanson's opposition.*

■■ ■ ■ In opposition to the summary judgment motion, Hanson undertook to dispute that he was precluded from performing the essential

---

[4] See footnote 6, *post.*

functions of his job and that he was not a qualified "individual with a disability."[5] Additionally, Hanson attempted to dispute Lucky's factual predicates, and submitted his own statement of facts, in an effort to challenge Lucky's proffered reason for terminating his employment and its assertion that it had reasonably accommodated his disability.[6]

The trial court granted Lucky's summary judgment motion on the grounds, among others, that (1) Hanson failed to demonstrate the proffered reasons for his termination were pretextual, and (2) Hanson failed to dispute that Lucky could not have made accommodations which would have allowed Hanson to return to his meatcutter job. Hanson's timely appeal followed.

## DISCUSSION

1. *Standard of review and burdens of proof in defense motions for summary judgment in employment discrimination actions.*

 " ' "Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision to grant [defendant's] summary judgment de novo." [Citation.]' [Citation.] An appellate court is not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not the rationale. [Citation.]" (*Prilliman* v. *United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951 [62 Cal.Rptr.2d 142].)

 "[A] defendant moving for summary judgment has the burden to show that the plaintiff cannot establish at least one element of his cause of action, 'or that there is a complete defense to that cause of action.' [Citations.] Once the defendant meets this burden, the burden shifts to the plaintiff to show 'that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' [Citation.] [¶] . . . The burden, however, does not shift to plaintiff until defendant carries its initial burden to

---

[5]In responding to a number of Lucky's facts, Hanson attempted to establish a triable issue about what constitutes the "essential functions" as opposed to the marginal duties of a meat cutter. As will be seen below, the question of what are the essential functions of a meat cutter's job is not material to our resolution of the case and so any factual disputes as to the job's "essential functions" are irrelevant. "[S]ummary judgment may be appropriate even if there are disputed factual issues; if the defendant's showing negates an essential element of the plaintiff's case, no amount of factual conflict upon other aspects of the case will preclude summary judgment. [Citations.]" (*Shively* v. *Dye Creek Cattle Co.* (1994) 29 Cal.App.4th 1620, 1627 [35 Cal.Rptr.2d 238].)

[6]Lucky did not dispute most of Hanson's proffered material facts. However, many of Hanson's facts are irrelevant. Some of his facts are unsupported by the evidence. Other facts misstate the evidence.

show that an essential element of the cause of action 'cannot be established. . . .' [Citation.] [¶] If the moving defendant argues that it has a complete defense to the plaintiff's cause of action, the defendant has the initial burden to show that undisputed facts support each element of the affirmative defense. Once it does so, the burden shifts to plaintiff to show an issue of fact concerning at least one element of the defense. [Citation.]" (*Bacon* v. *Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858 [62 Cal.Rptr.2d 16], quoting Code Civ. Proc., § 437c, subd. (o)(2).)

■ Normally, in employment discrimination cases, " '[t]he employee must first establish a prima facie [showing] of wrongful discrimination. If [he] does so, the burden shifts to the employer to show a lawful reason for its action. . . .' [Citations.]" (*Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1730 [35 Cal.Rptr.2d 181].) The employer must show that the procedure by which the employee was terminated was "validly and fairly devised and administered to serve a legitimate business purpose." (*Id.,* at p. 1733.) The burden then shifts to the employee to prove that " '. . . the proffered justification is mere pretext.' [Citations.]" (*Id.,* at p. 1730.) The employee "must produce 'substantial responsive evidence' " on this last point. (*Id.,* at p. 1735.) Pretext may be inferred from the timing of the discharge decision, the identity of the decisionmaker, or by the discharged employee's job performance before termination. (*Flait* v. *North American Watch Corp.* (1992) 3 Cal.App.4th 467, 476, 479 [4 Cal.Rptr.2d 522].) ■ ■■ Pretext may be demonstrated by showing ". . . that the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge. [Citation.]" (*Gantt* v. *Wilson Sporting Goods Co.* (6th Cir. 1998) 143 F.3d 1042, 1048-1049.)[7]

■ In the context of a summary judgment motion in an employment discrimination action, however, it has been observed that " 'the burden is reversed . . . .' " (*Martin* v. *Lockheed Missiles & Space Co., supra,* 29 Cal.App.4th at p. 1731, citation omitted), because the defendant who seeks summary judgment bears the initial burden to show that " 'the action has no merit' . . . and the plaintiff will not be required to respond unless and until the defendant has borne that burden." (*Id.,* at p. 1730, citation omitted.)

---

[7]Hanson's lawsuit was brought under FEHA. However, "[i]nasmuch as the FEHA and the interpretative regulations in California Code of Regulations were modeled on the federal Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990, decisions interpreting those laws may be useful in deciding cases under the FEHA. [Citation.]" (*Prilliman* v. *United Air Lines, Inc., supra,* 53 Cal.App.4th at p. 948.) Therefore, under certain circumstances, we may look to the cases from the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.) when interpreting FEHA.

In an employer's summary judgment motion, the burdens work thusly: Once the employer makes a ". . . sufficient showing of a legitimate reason for discharge, . . ." (*Martin* v. *Lockheed Missiles & Space Co., supra,* 29 Cal.App.4th at p. 1735), i.e., that it had a lawful, nondiscriminatory reason for the termination (*id.,* at p. 1732), then the discharged employee seeking to avert summary judgment must ". . . demonstrate either (by additional facts or legal argument) that the defendant's showing was in fact insufficient or (by competent evidentiary materials) that there was a triable issue of fact material to the defendant's showing. [Citations.]" (*Ibid.*) With respect to the latter choice, the employee ". . . must produce 'substantial responsive evidence' that the employer's showing was untrue or pretextual. [Citation.] For this purpose, speculation cannot be regarded as substantial responsive evidence. [Citation.]" (*Id.,* at p. 1735.)

2. *Application to Hanson's discrimination lawsuit.*

[[ A. *Pretext.*]]*

. . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Accommodation.*

▮▮▮ In his complaint, Hanson alleged as evidence of discrimination, that Lucky failed to accommodate him as required under FEHA and the ADA, which failure, he alleges, constitutes evidence of discrimination.

▮▮▮ Under FEHA, ". . . an employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy or offering such assistance or benefit to any other employees." (*Prilliman* v. *United Air Lines, Inc., supra,* 53 Cal.App.4th at pp. 950-951.)

Reasonable accommodation includes, "(1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities. [¶] (2) Job restructuring, *part-time or modified work schedules, reassignment to a vacant position,* acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, *and other similar accommodations* for individuals with disabilities." (§ 12926, subd. (m), italics added; Cal. Code Regs., tit. 2, § 7293.9, subd. (a).) However, FEHA's

*See footnote, *ante,* page 215.

list of accommodation measures, by its terms, is incomplete (*ibid.*), and so we may look to its federal cognates for guidance. (*Prilliman* v. *United Air Lines, Inc., supra,* 53 Cal.App.4th at p. 948.)

Turning to the federal statutes, in appropriate circumstances, reasonable accommodation can include providing the employee accrued paid leave or additional unpaid leave for treatment. (*Schmidt* v. *Safeway Inc.* (D.Or. 1994) 864 F.Supp. 991, 996, citing 29 C.F.R. pt. 1630, appen.; *Corbett* v. *National Products Co.* (E.D.Pa. 1995) 4 A.D. Cases 987, 990.) As one court explained, ". . . the ADA may require an employer to provide a leave of absence to an employee with an alcohol problem, particularly if the employer would provide that accommodation to an employee with cancer or some other illness requiring medical treatment." (*Schmidt* v. *Safeway Inc., supra,* 864 F. Supp. at p. 996.) However, the *Schmidt* court explained, "[a]n employer is not required to offer an accommodation that is likely to be futile because, even with accommodation, the employee could not safely and efficiently perform the essential functions of the job. Thus an employer would not be required to provide repeated leaves of absence (or perhaps even a single leave of absence) for an alcoholic employee with a poor prognosis for recovery. [Citation.]" (*Id.,* at p. 997.) Hence, the leave accommodation is qualified. "As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation." (*Kimbro* v. *Atlantic Richfield Co.* (9th Cir. 1989) 889 F.2d 869, 879, cert. den. *sub nom. Atlantic Richfield Co. Inc.* v. *Kimbro* (1990) 498 U.S. 814 [111 S.Ct. 53, 112 L.Ed.2d 28].) In sum, a finite leave of absence has been considered to be a reasonable accommodation under the ADA, provided it is likely that following the leave the employee would be able to perform his or her duties. (*Kimbro* v. *Atlantic Richfield Co., supra,* 889 F.2d at pp. 878-879; *Schmidt* v. *Safeway Inc., supra,* 864 F. Supp. at pp. 996-997; *Corbett* v. *National Products, Co., supra,* 4 A.D. Cases at p. 990.) ▬ We hold that a finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties.

▬ Here, the undisputed evidence shows that Lucky attempted to reasonably accommodate Hanson, not once, but twice. While Hanson was entitled under the CBA to nine months of leave, he actually enjoyed sixteen *months* of leave, nearly twice the allowable period. Indeed, Hanson asserted as his own fact that he was terminated *seven* months after expiration of his medical leave of absence. There is no showing that at the time he began his leave, Hanson's prognosis for recovery was not good. ▬ "Reasonable accommodation does not require the employer to wait

indefinitely for an employee's medical condition to be corrected. . . ." (*Gantt* v. *Wilson Sporting Goods Co., supra,* 143 F.3d at p. 1047, citation omitted.) ▉ Indubitably, the seven extra months of leave beyond the CBA period that Lucky granted Hanson for the purpose of recuperation constitutes a reasonable accommodation in this case. The fact that at the end of his leave, Hanson was restricted from engaging in certain activities, does not render the leave accommodation itself unreasonable.

In any event, when Hanson returned with restrictions, Lucky further attempted to assist his reentry into the workplace. FEHA lists as reasonable accommodations reassignment to a vacant position and a part-time or modified work schedule. (§ 12926, subd. (m); Cal. Code Regs., tit. 2, § 7293.9, subd. (a).) The CBA also delineates such accommodations, provided that the alternative offered position is vacant and the employee qualifies for it. Here, Dr. Hekmat's return-to-work release restricted Hanson from performing as a meatcutter and so Lucky then endeavored to identify an alternate, vacant position. Lucky ultimately offered Hanson the job of meat clerk. Sinclare testified that Hanson could perform most of the duties of the clerk position, and that the part-time nature of that position was in response to Dr. Hekmat's restriction against prolonged standing. The evidence shows there was no other available position for which Hanson qualified.

Notwithstanding these two accommodations, Hanson contends that Lucky discriminatorily failed to accommodate his disability. Hanson would have Lucky acquire or modify equipment or devices (§ 12926, subd. (m)(2)), by (1) providing him a hand brace, or (2) assigning him to a shift in which receiving meat was not involved, and (3) by providing him with "ergonomic knives," and (4) "changing his [Hanson's] hand dominance," all in an effort to return him to his meatcutter job. This contention fails for two reasons.

First, the report of Dr. Sanford Kornblum, submitted in support of this contention, does not support Hanson's insistence that "[b]racing would be [r]easonable." Dr. Kornblum, the qualified medical examiner retained in connection with Hanson's workers' compensation case, actually opined in his report filed two months after Hanson was discharged, that "bracing would be reasonable *if he [Hanson] had to perform a great deal of hand [/]wrist* activities." (Italics added.) But Kornblum did not state that bracing would enable Hanson to return to his meatcutter job. To the contrary, the doctor stated of the surgery on Hanson's right wrist *"I do not believe, however, that it will allow him to return to his regular work activities."* (Italics added.) Continuing, Kornblum opined that "[Hanson's] disability with respect to the right wrist/hand is that of no heavy types of lifting, pushing, pulling or torquing motions. *Because of the stability of the wrist he will not be*

*able to perform jobs that require a great deal of dexterity of the wrist.*" Therefore, this report does not support Hanson's contention that a hand brace would have been a reasonable accommodation, nor does it support Hanson's own after-the-fact, self-serving deposition testimony that hand bracing would have been a reasonable accommodation. In fact, Dr. Kornblum's report only serves to confirm Lucky's earlier conclusion that Hanson could *not* be returned to the meatcutter position.

Second, Hanson cannot be heard to complain that Lucky did not provide these measures because Lucky made *two other reasonable and effective accommodations* available to Hanson. ▆▆ The employer is not obligated to choose the best accommodation or the accommodation the employee seeks. (*Soldinger* v. *Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 370 [58 Cal.Rptr.2d 747].) Rather, "The Appendix to the ADA regulations explains that 'the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.' [Citation.] As the Supreme Court has held in analogous circumstances, an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided. [Citation.]" (*Hankins* v. *The Gap, Inc.* (6th Cir. 1996) 84 F.3d 797, 800-801, quoting from *Ansonia Board of Education* v. *Philbrook* (1986) 479 U.S. 60, 68-69 [107 S.Ct. 367, 371-372, 93 L.Ed.2d 305].)[11]

▆▆ Citing the EEOC (Equal Employment Opportunity Commission) guidelines, Hanson challenges Lucky's accommodations on the ground the company failed to engage in an interactive process with him to ascertain what reasonable accommodations were available given *Hanson's* work restrictions. However, Hanson acknowledges that the EEOC guidelines are merely recommendations; they do not set forth statutory requirements. ▆▆ As the Ninth Circuit Court of Appeals has held, "[t]he ADA and its regulations do not . . . create independent liability for the employer for failing to engage in ritualized discussions with the employee to find a reasonable accommodation. [Citations.]" (*Barnett* v. *U.S. Air, Inc.* (9th Cir. 1998) 157 F.3d 744, 752-753, and cases cited therein; but see *Mengine* v. *Runyon* (3d Cir. 1997) 114 F.3d 415, 420 [both parties have duty to explore accommodations]; *Taylor* v. *Principal Financial Group Inc.* (5th Cir. 1996)

---

[11]While the reasonableness of an accommodation is generally a factual question (*Soldinger* v. *Northwest Airlines, Inc., supra,* 51 Cal.App.4th at p. 370), there is no dispute here that these accommodations were reasonable. The only disagreement is over whether they constituted accommodations at all.

93 F.3d 155, 165 [employer obligation to participate in interactive process is triggered by employee's request for accommodation].)

The undisputed evidence here is that while Hanson did not request any accommodation, Sinclare met with Frazier, Lucky's human resources manager for the entire Southern California region. They consulted *Hanson's* doctor's permanent and stationary report and then asked *Hanson's* doctor for clarification of his report. "The [ADA] guidelines, and logic, indicate that an employer may use the opinions of physicians and others to gauge the employee's abilities and limitations. [Citation.]" (*Puckett* v. *Porsche Cars of North America, Inc.* (D.Nev. 1997) 976 F.Supp. 957, 965, affd. 165 F.3d 917.) Not stopping there, Frazier and Sinclare compared *Hanson's* doctor's work restrictions to the job descriptions, and consulted more than once with *Hanson's* vocational and rehabilitation specialist. The rehabilitation specialist emphatically told Sinclare that *Hanson* wanted to return to the meat department. Given that Lucky consulted with so many of *Hanson's own representatives*, identified the only available alternative position and offered it to Hanson, a reversal for the sole purpose of requiring Lucky to discuss the same issues with Hanson himself would unreasonably laud form over substance. We see no reason why this employer should be subjected to liability for failing to engage in the interactive process where the employee was reasonably accommodated *not once but twice*, particularly because Lucky acted in conformity with the CBA. (Cf. *Taylor* v. *Phoenixville School Dist.* (3d Cir. 1999) 174 F.3d 142, 164, fn. 10 [responding to concerns expressed in *Barnett* v. *U.S. Air, Inc.*, *supra*, 157 F.3d at page 753, and concluding in dicta where employer successfully makes reasonable accommodations as matter of law the employer did not act in bad faith].) All told, Hanson has raised no triable issue of material fact that Lucky provided him with no reasonable accommodation. We therefore conclude that there is no evidence that Lucky discriminated against Hanson because of his disability.

### 3. *Conclusion.*

Summary judgment was properly granted in this case because, regardless of whether Hanson can perform the essential functions of his job, Lucky carried its burden to show a nondiscriminatory business reason for terminating Hanson. Hanson has not demonstrated factual evidence or legal argument why Lucky's reason was pretextual. Furthermore, where Lucky made two reasonable accommodations, Hanson cannot demonstrate that Lucky discriminated against him by failing to accommodate his disability. Finally, because Hanson's FEHA claim fails, his claim for wrongful termination in violation of public policy fails.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Klein, P. J., and Kitching, J., concurred.