John WATKINS, Plaintiff–Appellant,

v.

AMERIPRIDE SERVICES, dba Ameripride Uniform Services, Defendant–Appellee.

No. 02–56082.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 2003.

Filed July 6, 2004.

Lloyd C. Ownbey, Jr., Pasadena, CA, for the plaintiff-appellant.

C. Craig Woo and Scott C. Lacunza, Jackson Lewis LLP, Los Angeles, CA, for the defendant-appellee.

Before: SILVERMAN, W. FLETCHER, and RAWLINSON, Circuit Judges.

Opinion by Judge RAWLINSON. Concurrence by Judge WILLIAM A. FLETCHER.

RAWLINSON, Circuit Judge:

Plaintiff–Appellant John Watkins (Watkins) unfortunately became disabled during his otherwise productive stint as an employee with Defendant–Appellee Ameripride Services (Ameripride). Ameripride tried to salvage Watkins' career by placing him on special assignment and on a leave of absence. However, Watkins was unable to recover sufficiently to resume his former position. Watkins sued Ameripride under the California Labor Code for improperly classifying him as exempt from overtime pay and thus failing to pay him for overtime work, and under California's Fair Employment and Housing Act (FEHA) for failure to accommodate his disability. The district court granted partial summary judgment in favor of Ameripride, finding that Watkins was exempt from California's overtime pay requirements under the motor carrier exemption to the California Labor Code. At the conclusion of a bench trial on the remaining claims, the district court entered judgment in favor of Ameripride, finding that Ameripride reasonably accommodated Watkins' disability. Because there is a genuine issue of material fact as to whether Watkins was engaged in interstate commerce while performing his duties, we reverse the grant of summary judgment in favor of Ameripride on the overtime claim. Because the district court properly concluded that Ameripride fulfilled its obligations under the FEHA, we affirm the judgment in

favor of Ameripride on Watkins' reasonable accommodation claim.

## I.

### BACKGROUND

Ameripride supplies businesses with uniform rental, sales and laundry services, and building maintenance products. It maintains a warehouse in California, where it keeps a stock of uniforms and other products that it sells. Ameripride maintains its stock by ordering products from out-of-state manufacturers.

Watkins worked as a Customer Service Representative (CSR) for Ameripride. His regular duties included delivering uniforms and products to customers on his designated route and picking up soiled uniforms for laundering. Watkins' position involved heavy lifting, including loading and unloading uniforms and garment racks at approximately thirty-five customer stops along his route. Watkins was generally expected to do his job alone. While Ameripride had on occasion assigned assistants to ride with various CSR's for limited periods of time, these assistants were taken from other duties at Ameripride and were, of necessity, temporary. Occasionally, a CSR is assigned to make special deliveries ("specials") in addition to his regular route. Ninety percent of specials are handled by the CSR who covers the route of the customer requiring the special delivery. Consequently, there is no full-time position for a CSR making special deliveries only.

On November 11, 1999, Watkins injured his wrist while lifting a rack of uniforms as part of his CSR duties. As a result, Watkins was rendered unable to perform the job duties of a CSR. Watkins discussed his injury with a Co–Service Manager at Ameripride, who assigned Watkins to deliver specials and to perform some telephone duties. Watkins continued to receive his former rate of pay, which consisted of a 10 percent commission from the revenue on his route.

On January 6, 2000, another Co–Service Manager informed Watkins that Ameripride could no longer pay him at his former rate for doing specials work. The manager offered Watkins a telephone position at $9–$10 per hour, because there were no other vacant positions at Ameripride for which Watkins was qualified. Watkins rejected the offer and was placed on a leave of absence. Watkins' CSR position remained open for approximately one year, during which time Watkins underwent surgery on his wrist. Regrettably, despite the surgery, Watkins remained totally disabled due to his wrist injury.

## II.

### STANDARDS OF REVIEW

■ We review the district court's grant of summary judgment de novo. See PLANS, Inc. v. Sacramento City Unified School Dist., 319 F.3d 504, 507 (9th Cir. 2003). Viewing the facts in the light most favorable to the nonmoving party, we must determine whether a genuine issue of material fact exists, and whether the district court applied the law correctly. Fortyune v. American Multi–Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir.2004). The district court's findings of fact following a bench trial are reviewed for clear error and its legal conclusions are reviewed de novo. Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1088 (9th Cir.2002).

## III.

### DISCUSSION

#### A. Watkins' Overtime Pay Claim

■ Watkins asserts a claim for overtime pay, premised on his contention that

throughout the course of his employment, Ameripride deprived him of overtime pay by erroneously designating his position as exempt from the regulations governing overtime pay. Regulations governing overtime pay in California are issued by California's Industrial Welfare Commission (IWC). Wage orders issued by the IWC are quasi-legislative regulations that are to be interpreted in the same manner as statutes. *See* Cal. Lab.Code § 1185; *see also Collins v. Overnite Trans. Co.*, 105 Cal.App.4th 171, 174, 178–79, 129 Cal. Rptr.2d 254 (2003).

IWC Wage Order No. 9, regulating wages, hours and working conditions in the transportation industry, excludes from its overtime pay requirements "employees whose hours of service are regulated by ... the United States Department of Transportation Code of Federal Regulations, Title .49, Sections 395.1 to 395.13." Cal.Code Regs. tit. 8, § 11090(3)(F)(1); *id.* § 11090(3)(H)(1)(1997).[1]

Sections 395.1 to 395.13 set the federal maximum hour restrictions for employees of motor carriers. However, these regulations are only applicable to motor carriers and drivers engaged in interstate commerce.[2] Thus, the issue before us is whether Watkins, as a CSR for Ameripride, was engaged in transporting property in interstate commerce so as to be subject to the federal regulations referenced in the IWC order. If so, Watkins is not entitled to overtime pay in California.[3]

To determine whether or not Watkins was engaged in inter-state commerce, we must examine the character of the shipments he was charged with delivering, and the intent of the shippers as to the ultimate destination of the goods. *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir.1997). The inter-state or intrastate character of the shipment is determined only after considering the entire panoply of "facts and circumstances surrounding the transportation." *Id.* (citation omitted). We have held that even intrastate deliveries can be considered part of interstate commerce if the property in question was originally delivered from out-of-state and the intrastate route is merely part of the final phase of delivery. *See id.*

In *Steiner*, the company received orders from its customers and placed the orders with out-of-state vendors. The goods were shipped to the company, which in turn distributed them to the specific customers who placed the orders, usually within a two-day period. We held that the company was engaged in interstate transportation, despite the fact that the delivery between the company and its customers was intra-state rather than interstate. *Id.* at 1470. We followed the United States Supreme Court's holding in *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568–69, 63 S.Ct. 332, 87 L.Ed. 460 (1943) that "[a] temporary pause in a warehouse does not mean that ... the goods are no longer in commerce within the meaning of the motor carrier act." *Id.* (internal quotation marks

---

1. The current exemption is contained at Cal. Code Regs. tit. 8, § 11090(3)(L)(1)(2004).

2. The FLSA contains a similar exemption, which applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service[.]" 29 U.S.C. § 213(b)(1). Federal case law interpreting the FLSA exemption is therefore instructive in determining whether Watkins was sufficiently

engaged in interstate commerce to bring him within the scope of the Department of Transportation regulations.

3. *See* 49 U.S.C. § 13501(1)(A) (giving the Department of Transportation jurisdiction over transportation by motor carriers taking place "between ... a State and a place in another State").

and alterations omitted). Recognizing the "practical continuity of movement" from the out-of-state shipper to the product's final in-state destination, the intrastate portion of the delivery route was characterized as transportation in interstate commerce. *Id.* at 569, 63 S.Ct. 332. Adhering to the decision of the Supreme Court in *Jacksonville Paper*, we ruled that intrastate deliveries may be considered in the stream of interstate commerce if the property in question originated from out-of-state, and the intrastate portion of the route is merely part of the final phase of the unmistakably interstate transport. *Steiner*, 110 F.3d at 1470.

However, in *Jacksonville Paper*, the Supreme Court also held that a certain category of goods was not shipped in interstate commerce. These were goods ordered by the wholesaler and kept in its warehouse. The orders were made by the wholesaler whose customers were "a fairly stable group," whose needs the manager could "estimate with considerable precision." 317 U.S. at 569, 63 S.Ct. 332.

■ Indefinite storage in a warehouse may transform goods shipped from out-of-state into intrastate deliveries. *See Southern Pac. Transp. Co. v. Interstate Commerce Comm'n*, 565 F.2d 615, 618 (9th Cir.1977) (holding that goods retained their intrastate character when they were delivered to and stored in the in-state company warehouse, with no designated designation at the time of delivery to the warehouse). The case we now consider is the converse of *Southern Pac.* In *Southern Pac.*, the goods originated intrastate and terminated interstate, with an intervening stay in the company warehouse. Here, the goods originated interstate and terminated intrastate, with an intervening stay in the company warehouse. In *Southern Pac.*, the determining factor was that the company "did not decide the final destination of any shipment of goods until after the goods had come to rest in the [intrastate] warehouse." *Id.* Consequently, the drivers who drove between the intrastate canning plants and the intrastate warehouse were not engaged in interstate commerce, because the intrastate warehouse was the only designated destination at the time of the transport.

■ Reading *Steiner, Jacksonville Paper*, and *Southern Pac.* together, we can garner the following guidance for this case: if a company places orders with an out-of-state vendor for delivery to specified intrastate customers, a temporary holding of the goods within an intrastate warehouse for processing does not alter the interstate character of the transportation chain culminating in delivery to the customer. If, on the other hand, a company places orders with an out-of-state vendor, with delivery to the company's intrastate warehouse for future delivery to customers yet to be identified, the transportation chain culminating in delivery to the customer is considered intrastate in nature.

■ Watkins' affidavit in the district court described the nature of his work. The great majority of his work consisted of picking up dirty uniforms and delivering clean uniforms for Ameripride customers. It is clear that this work is not in interstate commerce within the meaning of the Motor Carrier Act exemption. Watkins also delivered new uniforms and other new products to customers on his route. This work was less than three percent of his overall work. Watkins describes his delivery of new materials as follows:

The delivery of new materials [to customers] was less than three-percent of the work I performed.

The new materials would arrive from Cleveland, Tennessee in full interstate truck loads, and be placed in the cage at

the plant, and uniforms in the warehouse would be classified by type, color and size of product. It was not set aside or earmarked for a particular customer. The only customers that had identifiable mats was [sic] Reynolds Metals. The identification was on the mats when I began servicing the accounts, and was there when I left. I received no orders from Reynolds for mats from Cleveland, Tennessee while I serviced the account. All uniforms arrived without specific identification by customer. Should a customer want special identification, he would order it by general description and order what identification should appear on the uniform. The uniform or other material would be taken from inventory, and the identification work would be done in the warehouse by persons specifically designated to do that work (in emergencies it would be done at the plant).

When I needed new uniforms, I would obtain them from the warehouse. Other new materials would be obtained from the plant. (There was appropriate security at both locations.) I would go to the employee in charge for access, and he would pick out whatever that customer needed.

In 8–1/2 years of employment, I did not see any orders where customers bought specific materials from Cleveland, Tennessee with delivery merely transhipped at the plant or warehouse. The orders were simply filled from fungable [sic] goods that were stored in the cage in the plant and uniforms from the warehouse. It is misleading to state that the products from out-of-state would be received and redelivered to waiting customers. The new materials would remain in the plant cage undesignated until the customer in [sic] weeks or months later decided he was in need of an item from

the fungable [sic] goods stored in either of Ameripride's facilities.

I was not requested at any time in my employment to pick up any material to be shipped out of state.

Watkins' affidavit, if believed, shows that the new materials were not delivered in interstate commerce, under the reasoning of *Jacksonville Paper*. Rather, the new materials delivered by Watkins were fungible, and were taken from general inventory after the customer made an order. Only the mats labeled Reynolds Metals might fit within the categories of goods that *Jacksonville Paper* held were shipped in inter-state commerce. But Watkins states that in the eight and one-half years of his employment he never delivered any of the mats.

It would not be a fair reading of *Steiner*, *Jacksonville Paper*, and *Southern Pac.* to characterize these intrastate deliveries as within the "practical continuity of[inter-state] movement" from the out-of-state vendor through the in-state company (Ameripride) to the in-state customer. *See Jacksonville Paper*, 317 U.S. at 569, 63 S.Ct. 332. Although Ameripride presented evidence that some of its merchandise was delivered directly to customers from out-of-state vendors, the evidence is disputed. In the face of such a dispute, summary judgment is not appropriate. *See Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir.2003).

### B. *Watkins' Reasonable Accommodation Claim*

California's Fair Employment and Housing Act, Cal. Gov't Code § 12940, provides that "[i]t shall be an unlawful employment practice ... [f]or an employer, because of the ... physical disability ... of any person ... to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't

Code § 12940(a). The FEHA, however, protects employers from liability for discharging an employee with a disability or medical condition when the employee "is unable to perform his or her essential duties ... in a manner that would not endanger his or her health or safety[.]" *Id.* at § 12940(a)(1); *see also id.* at § 12940(a)(2). Ameripride does not challenge the district court's conclusion that Watkins' wrist injury constitutes a disability under the FEHA. The only issue before us is whether Ameripride provided Watkins with a reasonable accommodation as required under the FEHA.

The FEHA provides that it is an "unlawful employment practice ... for an employer.. to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't Code § 12940(m). A reasonable accommodation may include "[j]ob restructuring, reassignment to a vacant position, part-time or modified work schedules, acquisition or modification of equipment or devices, adjustment or modification of examinations, training materials or policies ... and other similar actions." Cal.Code Regs. tit. 2, § 7293.9(a)(2).

Watkins asserts that Ameripride should have accommodated him by offering him a full time position as a "specials" driver. In the alternative, he contends that Ameripride should have modified his CSR job by providing him with an assistant and/or equipment such as carts and dollies. As we discuss below, the accommodations requested by Watkins are either not required under the FEHA or would not, as a factual matter, have permitted Watkins to resume his duties as a CSR.

■■■■ Ameripride was only obligated to reassign Watkins to another position within the company if there were an *existing, vacant* position for which Watkins was qualified. *See Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 227, 87 Cal. Rptr.2d 487 (1999). It is undisputed that Ameripride had no existing position involving exclusively specials deliveries. Furthermore, Ameripride was not required to create a new position to accommodate Watkins. *See McCullah v. Southern California Gas Co.*, 82 Cal.App.4th 495, 501, 98 Cal.Rptr.2d 208 (2000). Accordingly, Ameripride was not required to create a "specials" driver position or permanent assistant position to accommodate Watkins.

■■■■ Following a bench trial, the district court made a finding of fact that, even with a cart, Watkins would be required to engage in the heavy lifting that he was unable to do. This finding was not clearly erroneous. Following Watkins' wrist surgery, he underwent physical therapy to strengthen his wrist and continued to follow prescribed exercises. However, Watkins' ability to lift and grab objects with his right hand never improved to the extent that he could use it on a consistent basis, as required by the CSR position.

Ameripride subsequently offered Watkins a vacant position doing telephone surveys, but he declined it. No other vacant positions were available for which Watkins was qualified.[4]

Ameripride also accommodated Watkins in other ways. Ameripride allowed Watkins to do specials deliveries at his former rate of pay for two months. Ameripride then left Watkins' job open for a year in order to allow Watkins to reclaim his position after surgery. Finally, Ameripride offered Watkins a job that he could perform despite his disability, which Watkins declined. Ameripride's actions satisfied its

---

4. While Watkins identifies in his brief several existing positions that he could possibly have qualified for, he does not dispute Ameripride's showing that these positions were not vacant.

obligation to reasonably accommodate Watkins' disability.

In *Jensen v. Wells Fargo Bank*, 85 Cal. App.4th 245, 102 Cal.Rptr.2d 55 (2000), the court held that an employer can prevail on a reasonable accommodation claim by showing, among other things, one of the following: "(1) [a] reasonable accommodation was offered and refused; [or] (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation[.]" *Id.* at 263, 102 Cal.Rptr.2d 55. Ameripride has shown both. Because Ameripride reasonably accommodated Watkins' disability, we affirm the district court's judgment in favor of Ameripride on Watkins' FEHA claim.[5]

## IV.

### *CONCLUSION*

A material issue of fact existed in the record regarding the extent to which the deliveries made by Watkins as an Ameripride employee were of an interstate character. In view of the existence of a material issue of fact, summary judgment on Watkins' overtime claim was not appropriate. The district court properly entered judgment in favor of Ameripride on Watkins' reasonable accommodation claim. Accordingly, the judgment of the district court is reversed as to the overtime claim and affirmed as to the reasonable accommodation claim.

REVERSED in part, AFFIRMED in part and REMANDED. Each party will bear its costs on appeal.

---

5. The fact that Ameripride reasonably accommodated Watkins' disability forecloses his allegation that Ameripride failed to engage in

WILLIAM A. FLETCHER, Circuit Judge, concurring:

I concur fully in the court's opinion. I write separately to point out that a potentially relevant legal issue was not argued and is not decided in this case.

When the federal Fair Labor Standards Act ("FLSA") was passed in 1938, it established federal standards for wages and hours. Section 7 of the FLSA limited the number of hours that could be worked in a given week, and provided for wages at one and one-half the regular rate for hours worked in excess of the limit. *See* 29 U.S.C. § 207(a). However, Section 13(b)(1) of the FLSA exempted from its overtime requirements employees within the regulatory power of the Interstate Commerce Commission ("ICC") under the federal Motor Carrier Act. *See id.* § 213(b)(1); *see also Morris v. McComb*, 332 U.S. 422, 423–25, 68 S.Ct. 131, 92 L.Ed. 44 (1947); *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 660, 67 S.Ct. 931, 91 L.Ed. 1158 (1947). After the dissolution of the ICC in 1995, the relevant regulatory authority became the Secretary of Transportation rather than the ICC, but the substance of the exemption from the FLSA remained. *See Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1468 & n. 2 (9th Cir.1997). Section 13(b)(1) of the FLSA contains the current Motor Carrier Act exemption, which provides:

The provisions of section 207 of this title [regulating overtime] shall not apply with respect to—

(1) any employee with respect to whom the Secretary of Transportation *has power to establish* qualifications and maximum hours of service pursuant to

the inter-active process. *See Hanson*, 74 Cal. App.4th at 229, 87 Cal.Rptr.2d 487.

the provisions of section 31502 of Title 49[.]

29 U.S.C. § 213(b)(1) (emphasis added).

California law contains a Motor Carrier Act exemption similar, but not identical, to the exemption in Section 13(b)(1) of the FLSA. California law provides that rules and regulations governing overtime pay in California are promulgated by the Industrial Welfare Commission ("IWC"). Cal. Lab.Code § 1173. Orders adopted by the IWC have the force of law. *See id.* § 1185. Under IWC Wage Order 9, regulating wages and hours of workers in the transportation industry, employers are required to pay not less than time-and-a-half for overtime work. Cal.Code Regs. tit. 8, § 11090(3)(A) ("Wage Order 9"). However, Wage Order 9 contains an exemption for certain transportation workers from the otherwise applicable overtime pay requirements. That Order provides, in relevant part:

> The provisions of this section are not applicable to employees whose hours of service *are regulated* by ... the United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers ... regulating hours of drivers.

Cal.Code Regs. tit. 8, § 11090(3)(F)(1)(1998) (emphasis added).[1] The issue in this case is the scope of the Motor Carrier Act exemption in Wage Order 9.

Watkins argued his case by analogy to the Motor Carrier Act exemption under the FLSA. That is, Watkins argued that the Secretary of Transportation does not have the "power to establish" regulations concerning his employment. Watkins did not rely on the actual words of Wage Order 9, which provide that drivers whose hours of service "are regulated" by the Secretary of Transportation are not entitled to overtime pay. Read literally, the scope of the exemption under Wage Order 9 appears to extend no farther than the actual regulation of driver hours by the Secretary of Transportation. The scope of the Motor Carrier Act exemption from the FLSA thus may be broader than under Wage Order 9, because the FLSA exemption is determined by the power of the Secretary to regulate, not by the regulations actually adopted.

California has the power to adopt a narrower exemption from its overtime laws than the Motor Carrier Act exemption under the FLSA. Every appellate court to consider the question (including our court) has concluded that state overtime laws are not preempted by the Motor Carrier Act exemption under the FLSA. *See Agsalud v. Pony Express Courier Corp. of Am.,* 833 F.2d 809, 810 (9th Cir.1987); *see also Overnite Transp. Co. v. Tianti,* 926 F.2d 220, 221–22 (2d Cir.1991); *Pettis Moving Co. v. Roberts,* 784 F.2d 439, 441 (2d Cir.1986); *Williams v. W.M.A. Transit Co.,* 472 F.2d 1258, 1263 (D.C.Cir.1972); *Dep't of Labor and Indus. of the State of Wash. v. Common Carriers, Inc.,* 111 Wash.2d 586, 762 P.2d 348, 349 (1988). Because there is no federal preemption, the words "are regulated" in Wage Order 9 may be read (so far as federal law is concerned) to mean that the Motor Carrier Act exemption applies to California overtime laws only to the extent that the Secretary actually regulates the hours of the drivers in question.

There is some evidence in the record to suggest that Ameripride's drivers are not actually regulated by the Secretary of

---

1. The Motor Carrier Act exemption is now contained at IWC Wage Order 9–2004(3)(L),

Cal.Code Regs. tit. 8, § 11090(3)(L)(1)(2004).

Transportation. For example, Watkins states in his affidavit filed in the district court, "In my 8 years of employment as a CSR, I was not required to comply with the Department of Transportation regulations concerning employment physicals, interstate log books, written and practical driving tests, and drug tests as would be required were I an interstate driver." However, while counsel for Watkins argued in his brief to us that California overtime law is not preempted by the federal Motor Carrier Act exemption of the FLSA, he made no argument, based on the text of Wage Order 9, that the exemption under California law is narrower than under the FLSA. The court's opinion therefore appropriately does not reach the issue of whether the exemption under Wage Order 9 depends on the existence of actual regulation rather than merely the power to regulate. .