Filed 11/13/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| JOHN GLYNN, | B296735 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC636862) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| ALLERGAN, INC., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Stephanie M. Bowick, Judge. Petition granted in part and denied in part.

Magnanimo & Dean, Frank A. Magnanimo; Alexander Krakow & Glick LLP, Tracy L. Fehr for Petitioner.

Paul Hastings, Stephen L. Berry and Blake R. Bertagna for Real Parties in Interest.

# INTRODUCTION

A temporary corporate benefits staffer mistakenly thinks an employee has transitioned from short term disability (STD) to long term disability (LTD) and is unable to work with or without an accommodation. She fires him. The terminated employee tries to correct the misunderstandings, but for months the corporation ignores his entreaties. Does this constitute direct evidence of disability discrimination under the Fair Employment and Housing Act (FEHA) (Government Code § 12900 et seq.)? For the reasons described below, we decide it does, and therefore reverse the portion of the trial court's order granting the corporation's motion for summary adjudication of the employee's disability discrimination cause of action. We also reverse the portions of the order granting summary adjudication of the employee's retaliation, failure to prevent discrimination, and wrongful termination causes of action. We publish to clarify that even a legitimate company policy, if mistakenly applied, may engender FEHA disability discrimination liability.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner John Glynn worked for real parties in interest Allergan, Inc. and Allergan USA, Inc. (collectively, Allergan) as a pharmaceutical sales representative. His primary duties involved driving to doctors' offices to promote Allergan's pharmaceutical products. In January 2016, Glynn requested, and Allergan approved, a medical leave of absence for a serious eye condition (myopic macular degeneration). Glynn's doctor provided a medical certification designating Glynn's work status as "no work" because Glynn "can't safely drive."

2

Allergan's reasonable accommodation policy lists "reassignment to a vacant position" as a potential accommodation. Thus, while on medical leave, Glynn repeatedly asked for help getting a new job within the company that did not require driving, and applied for several open positions, but Allergan never reassigned him.

On July 20, 2016, a temporary Allergan benefits department employee, Anne Marie Perosino, sent a letter to Glynn informing him that his employment was being terminated effective July 20, 2016: "We received notification from Matrix System of your approval for Long Term Disability, effective July 20, 2016. According to the Allergan Family and Medical Leave (AFML) policy, you will no longer be eligible to remain on Inactive Status and your employment has ended on 07/20/16, due to your inability to return to work by a certain date with or without some reasonable workplace accommodation." Perosino mistakenly believed that Glynn's termination was required under Allergan's policy and practice. Allergan's actual policy, however, is that termination is required once the employee has applied, and been approved, for LTD benefits; not, as Perosino believed, once an employee's "transition date" from STD to LTD benefits (i.e. the date the employee becomes eligible for LTD benefits) has passed. At no point did Glynn apply for LTD, and it is undisputed that he could have returned to work with reasonable accommodation. The day after his termination, Glynn emailed a letter to the members of the Allergan Human Resources Department, including its director, stating he never applied for LTD, that he could work in any position that did not require driving, and protesting the mistaken decision to terminate him.

3

Glynn was not reinstated, so he sued Allergan alleging eight causes of action: (1) disability discrimination; (2) failure to engage in the interactive process; (3) failure to accommodate disability; (4) retaliation; (5) failure to prevent discrimination and harassment; (6) retaliation in violation of Labor Code section 1102.5; (7) wrongful termination/adverse treatment in violation of public policy; and (8) intentional infliction of emotional distress.

Nine months after Glynn informed Allergan he was not on LTD and was ready and willing to work in a suitable position, and after he filed suit, Allergan's Chief Human Resources Officer, Karen Ling, sent Glynn a letter stating her belief that "the human resources personnel involved . . . sincerely believed the actions taken were appropriate . . . [but that the reasonable accommodation] process could and should have been handled better," and conceding "[his] employment should not have been ended." Ling offered to reinstate Glynn unconditionally with full back pay and to continue his pay and benefits at the level he was receiving before he went out on medical leave while he identified a job to which he wanted to be assigned and for which he was qualified. Glynn responded by rejecting Allergan's offer of reinstatement because Ling's letter did not identify any specific position being offered or the compensation, and Glynn's stated belief that Allergan would continue to mistreat him and fail to place him in an open position. Ling sent another letter to Glynn asking him to reconsider his rejection of her reinstatement offer. Glynn responded to Ling's second letter, again rejecting the reinstatement offer because he did not "believe [her] offer was made in good faith." Glynn's treating psychologist also declared Glynn's psychological well-being would have been negatively

4

affected had he returned to Allergan. Glynn's rejection of Ling's reinstatement offers became the basis for Allergan's failure to mitigate damages affirmative defense.

Allergan moved for summary judgment or, alternatively, summary adjudication of each cause of action. It also moved for summary adjudication of its failure to mitigate damages affirmative defense and Glynn's request for punitive damages. In a lengthy and detailed ruling, the trial court denied Allergan's motion for summary judgment, but granted summary adjudication in favor of Allergan on Glynn's causes of action for: (1) disability discrimination; (2) retaliation; (3) failure to prevent discrimination and harassment; (4) retaliation in violation of Labor Code section 1102.5; (5) wrongful termination/adverse treatment in violation of public policy; and (6) intentional infliction of emotional distress. It also granted Allergan's motion for summary adjudication of its failure to mitigate affirmative defense and the unavailability of punitive damages. The court denied Allergan's motion for summary adjudication of Glynn's causes of action for (1) failure to engage in the interactive process and (2) failure to reasonably accommodate his disability.

Glynn filed a petition for writ of mandate in this court to reverse the trial court's summary adjudication on all causes of action and defenses except summary adjudication of his claims for Labor Code section 1102.5 retaliation and intentional infliction of emotional distress. We issued an alternative writ ordering the court to either: (1) vacate its summary adjudication order and instead enter a new order denying the motion on the following causes of action: the first cause of action for disability discrimination on the ground Glynn has shown direct evidence of disability discrimination; the fourth cause of action for disability-

5

related retaliation on the ground Glynn demonstrated triable issues of material fact; the fifth cause of action for failure to prevent discrimination and harassment; and the seventh cause of action for wrongful termination/adverse treatment in violation of public policy on the ground that these causes of action are dependent on or derivative of the first cause of action; or, in the alternative (2) show cause why a peremptory writ of mandate should not issue. The trial court did not change its order. Allergan filed a return to the writ and Glynn filed a reply.

## DISCUSSION

### I. Allergan is Not Entitled to Summary Adjudication of Glynn's First Cause of Action for Disability Discrimination

California has adopted the three-stage burden-shifting test for discrimination claims set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S. Ct. 1817, 36 L. Ed 2d 688] (*McDonnell Douglas*). (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 [100 Cal. Rptr. 2d 352] (*Guz*).) The plaintiff has the initial burden to make a prima facie showing of employment discrimination.[1] (*Ibid*.) If the plaintiff establishes a prima facie

---

[1] The elements of a disparate treatment disability discrimination claim are that the plaintiff (1) suffered from a disability or was regarded as suffering from a disability, (2) could perform the essential duties of a job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability. (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 310.)

6

case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. (*Id.* at p. 355.) If the employer sustains this burden, the plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. (*Id.* at p. 356)

The *McDonnell Douglas* three-stage framework does not apply, however, where the plaintiff presents direct evidence of discrimination. Thus, in disability discrimination cases, the threshold issue is "whether there is direct evidence that the motive for the employer's conduct was related to the employee's physical or mental condition." (*Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 123 (*Wallace*).) "[A] plaintiff alleging disability discrimination can establish the requisite employer intent to discriminate by proving (1) the employer knew that plaintiff had a physical condition that limited a major life activity, or perceived him to have such a condition, and (2) the plaintiff's actual or perceived physical condition was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action." (*Id.* at p. 129.) Relying on *Wallace*, Glynn contends he provided direct evidence of disability discrimination, making the *McDonnell Douglas* framework inapplicable. We agree.

In *Wallace*, the county removed a deputy sheriff from his job as a bailiff and placed him on an unpaid leave of absence based on its good faith—but incorrect—assessment that he could not safely perform his duties as a bailiff even with reasonable accommodation. (*Wallace, supra*, 245 Cal.App.4th at p. 115.) The court held the trial court erred in instructing the jury that animus or ill will was required to prove discriminatory intent.

7

(*Ibid*.) The court explained: "California law does not require an employee with an actual or perceived disability to prove that the employer's adverse employment action was motivated by animosity or ill will against the employee. Instead, California's statutory scheme protects employees from an employer's erroneous or mistaken beliefs about the employee's physical condition. ([Gov. Code,] § 12926.1, subd. (d).) In short, the Legislature decided that the financial consequences of an employer's mistaken belief that an employee is unable to safely perform a job's essential functions should be borne by the employer, not the employee, even if the employer's mistake was reasonable and made in good faith." (*Ibid*.)

Here, neither party contends Glynn could reasonably be categorized as totally disabled and unable to perform any job at Allergan with or without reasonable accommodation. That's how he was categorized, however. The evidence demonstrates Perosino mistakenly believed Glynn transitioned to LTD, from which she erroneously concluded Glynn was unable to work, with or without an accommodation. As noted above, Perosino's termination letter to Glynn states in part, "your employment has ended on 07/20/16, due to your inability to return to work by a certain date with or without some reasonable workplace accommodation." Glynn recognizes Allergan's actual policy is to terminate employees only after they have applied, and been approved, for LTD benefits. That presumably is because a policy automatically requiring termination of a disabled employee who goes on LTD can only be lawful if the employee certifies he or she is unable to work with or without an accommodation. (*See e.g. Nadaf-Rahrov v. Neiman Marcus Group, Inc*. (2008) 166 Cal.App.4th 952, 976 [the plain language of Government Code

section 12940(a) "clearly states that an employer is not liable for discharging a person with a disability because of the disability if the person is unable to perform the essential functions of the job with or without reasonable accommodations."]; *see also Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226-227 ["'Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected.'"].)

Even assuming Perosino's mistakes were reasonable and made in good faith, a lack of animus does not preclude liability for a disability discrimination claim. (*Wallace, supra,* 245 Cal.App.4th at p. 115.) Accordingly, we conclude Glynn provided direct evidence of disability discrimination—Allergan terminated him because Perosino mistakenly believed he was totally disabled and unable to work. This is enough to defeat a motion for summary adjudication.

## II. Allergan is Not Entitled to Summary Adjudication of Glynn's Fourth Cause of Action for Retaliation

The *McDonnell Douglas* three-stage framework applies to a FEHA retaliation cause of action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) Under *McDonnell Douglas*, the plaintiff has the burden of establishing a prima facie case of retaliation by showing: (1) he engaged in "protected activity"; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. (*Yanowitz, supra*, 36 Cal.4th at p. 1052.) "Although an employee need not formally file a charge in order to qualify as being engaged in protected opposing

9

activity, such activity must oppose activity the employee reasonably believes constitutes unlawful discrimination, and complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Id*. at pp. 1046-1047, fn. omitted.) "'The relevant question . . . is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.'" (*Id*. at p. 1047.)

Glynn relies on four emails to demonstrate he engaged in "protected activity" by complaining he was not being accommodated for his disability. For example, in an email dated May 19, 2016 to Perosino and other Allergan human resources employees, Glynn wrote, "Given the amount of time that has passed and the minimal response I have received from the entire Human Resources Department, I feel that my current condition has been ignored." He further expressed, "I have identified several appropriate open positions on the Allergan Career Job Board over this time frame, but no action ever appears to take place." In a June 8, 2016 email to Luwaine Defreese, an employee in Allergan's Human Resources department, Glynn stated "I have been previously told by you . . . that disability is an alternative accommodation in lieu of work. It is not. I have been requesting to return to work for over four months. . . . . I had hoped that after months of being ignored this note would expedite my return to work. It hasn't. The company cannot just allow me to languish on disability. [¶] I no longer believe you or the company are

10

sincere in accommodating me and returning me to work in a comparable position. . . ."

We disagree with the trial court's conclusion that these emails do not constitute complaints. The emails would permit a reasonable trier of fact to find Glynn sufficiently communicated to Allergan that he believed the way he was being treated (i.e. ignored and not accommodated for his disability) was discriminatory. The evidence also demonstrates Glynn was terminated two months after he complained. Temporal proximity between the protected activity and the adverse action is sufficient to shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action. (*See Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 868.) Further, there are disputed issues of fact with respect to whether Allergan acted in good faith in attempting to find a job for Glynn within the company. Moreover, Allergan was immediately made aware of Perosino's error in terminating Glynn contrary to Allergan's policy, yet waited nine months to offer reinstatement. Based on these facts, a jury could infer the termination was retaliatory.

As noted above, Allergan has not articulated a legitimate nondiscriminatory reason for Glynn's termination. Although Perosino was mistaken in her application of Allergan's policy, underlying her mistake was an unfounded determination that Glynn was completely disabled and unable to work with or without an accommodation. (*Wallace, supra*, 245 Cal.App.4th at p. 115 ["an employer's mistaken belief that an employee is unable to . . . perform a job's essential functions should be borne by the employer, not the employee . . ."].

11

Thus, we conclude the trial court erred in granting Allergan's motion for summary adjudication of Glynn's FEHA retaliation cause of action.

## III. Glynn's Fifth Cause of Action for Failure to Prevent Discrimination and Seventh Cause of Action for Wrongful Termination in Violation of Public Policy Should Survive Summary Adjudication for the Same Reasons as His Causes of Action for Discrimination and Retaliation

Allergan concedes Glynn's causes of action for failure to prevent discrimination and wrongful termination are derivative of Glynn's FEHA disability discrimination and retaliation causes of action. We therefore conclude Allergan is not entitled to summary adjudication of these claims for the same reasons it is not entitled to summary adjudication of Glynn's FEHA disability and retaliation claims.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its March 11, 2019 order to the extent it granted summary adjudication of Glynn's (1) first cause of action for disability discrimination, (2) fourth cause of action for retaliation, (3) fifth cause of action for failure to prevent discrimination, and (4) seventh cause of action for wrongful termination in violation of public policy, and enter a new order denying summary adjudication of those causes of action. The balance of the trial court's March 11, 2019 order is unaffected by our decision, and we express no view on it at this time. Glynn is awarded his costs in this proceeding.

CERTIFIED FOR PUBLICATION

CURREY, J.

WE CONCUR:

MANELLA, P. J.

WILLHITE, J.

13