Filed 6/26/13  Jackson v. Regus Management Group CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TAMARA JACKSON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>REGUS MANAGEMENT GROUP, LLC,<br><br>    Defendant and Respondent. | B239700<br><br>(Los Angeles County<br>Super. Ct. No. BC419826) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael C. Solner, Judge. Affirmed.

Law Offices of Douglas B. Spoors and Douglas B. Spoors for Plaintiff and Appellant.

Carothers, Disante & Freudenberger LLP, Dave Carothers, Nancy G Berner  and Karimah J. Lamar for Defendant and Respondent.

_____

## INTRODUCTION

This is an appeal from the granting of a motion for summary judgment for Defendant and Respondent Regus Management Group, LLC (Regus) regarding an employment claim by Plaintiff and Appellant Tamara Jackson (Jackson). The trial court focused upon Regus' right to terminate any employee who was on a medical leave of absence for more than six months. The trial court concluded Regus had a legitimate non-discriminatory reason for Jackson's termination, and accordingly entered judgment in favor of Regus.

Jackson's appeal asserts various triable issues of material fact. We affirm.

## FACTUAL BACKGROUND

The principal question in an appeal from the granting of a summary judgment is whether any material facts are in dispute. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) Consequently, we present "the facts" in the next two sections as provided by Jackson's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment.

1. *Jackson's Employment History*

Jackson came to Regus through a temp agency in August of 2007, and she became a regular employee in November 2007. She worked as a Client Service Representative, providing office support to Regus' clients.

After she was diagnosed with Carpal Tunnel Syndrome (CTS), Jackson filed a related workers' compensation claim on April 30, 2008; that claim settled on January 14, 2009. Due to her CTS, Jackson was absent for several days in May 2008, when she returned with a few work restrictions. Soon thereafter, Jackson served on jury duty.

2. *"Totally Incapacitated" for 12 Months*

On June 9, 2008, after Jackson received two written warnings about her work performance, she left after lunch and did not return. Instead, she called, telling her supervisor, Arden Haywood, that she was seeing a doctor. On June 11, Dr. Oscar Moore, Jr., took Jackson off work for a medical leave of absence. She notified Regus she would remain off work pursuant to her doctor's orders.

Jackson thereafter faxed to Regus certificates from Dr. Moore about every two months, on August 1, 2008, October 2, 2008, December 2, 2008, January 29, 2009 and March 19, 2009. Each of these five certificates stated that Jackson was "totally incapacitated" and under Dr. Moore's care for another two months. On May 14, 2009, Jackson faxed a sixth and final certificate stating she was still totally incapacitated; that certificate, in handwriting, said she was released for a return to work on June 10, 2009.

3.     *Emails*

Prior to Jackson's departure on June 9, 2008, her general manager in Los Angeles, Scott Lauray, emailed Amando Hernandez, a human resources (HR) representative in Regus' headquarters in Addison, Texas; that email discussed Jackson's CTS work restrictions and unapproved time off. Lauray added that Jackson "is still underperforming and is not hitting the expectations" for her position. Lauray noted she had "serious performance issues," she did not update Regus regarding her absence for alleged jury duty, and when she returned to work, she did "so unannounced and tardy." Lauray asked if there were "any grounds that we can use for termination here? This is getting frustrating. . . ."

On July 29, 2008, after Jackson left, Mandy Macklin in Addison emailed Amado Hernandez, asking whether Jackson had been "termed" (presumably meaning terminated). When Hernandez asked "[w]hich one is that?," Macklin replied she "is our Worker's Comp gal in California . . . ." Macklin then emailed Haywood, indicating that Jackson had sent another doctor's certificate stating she would be out until October 2, 2008. Haywood replied, asking are we "still going with the same plan when she is ready to return correct? Or does this extension for her make her eligible for the medical leave? I think her return is pretty close to her being with us for a year."

4.     *Regus' Leave Of Absence Policy and Jackson's Termination*

According to the Regus HR Handbook (HR Handbook), "[a]fter 6 months of medical leave, if the Team Member is still not actively at work, they will be terminated from employment, subject to applicable federal and state law."

On January 31, 2009, several months into Jackson's absence, the HR department in Addison terminated Jackson. When Jackson returned to Regus in June 2009, she was informed for the first time that Regus had terminated her. Jackson responded with discrimination and retaliation claims to the EEOC and the DFEH.

**PROCEDURAL BACKGROUND**

In her lawsuit, Jackson alleged:

1. Disability discrimination in violation of the federal Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.), and of California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940(a));

2. Wrongful termination in violation of the FEHA and the ADA;

3. Breach of an implied contract;

4. Breach of the implied covenant of good faith and fair dealing;

5. Intentional infliction of emotional distress; and

6. Negligent infliction of emotional distress.

On January 9, 2012, the trial court ruled that Regus had a legitimate business reason for terminating Jackson (i.e., she was absent from work for more than the allowed six months). As to the discrimination claim, the trial court found Jackson could not establish that she was a "qualified person with a disability." And, she did not set forth admissible evidence to dispute that Regus reasonably accommodated her work restrictions, nor that Regus' purported reason for terminating Jackson was a pretext for discrimination. As to the wrongful termination claim, Jackson failed to establish a predicate public policy violation. With reference to the claim for breach of an implied contract and for breach of the implied covenant of good faith and fair dealing, the trial court found that Regus did not breach the terms of her at-will employment. As to the claim for negligent infliction of emotional distress, the trial court found that the supervisors' conduct was not negligent, nor extreme or outrageous; moreover, it was preempted by the exclusive remedy of the Workers' Compensation Act (WCA), Labor Code sections 3600-3602. With reference to Jackson's request for punitive damages, the

4

trial court found she provided no evidence that Regus' employees acted with malice or oppression.

## STANDARD OF REVIEW

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Ibid*.) The party opposing summary judgment "may not rely upon the mere allegations or denials of its pleadings," but rather "shall set forth the specific facts showing that a triable issue of material fact exists." (*Ibid*.)

Where summary judgment has been granted, we review the trial court's ruling de novo. (*Aguilar, supra,* 25 Cal.4th at p. 860.) We consider all the evidence presented by the parties in connection with the motion (except that which was properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) We affirm summary judgment where the moving party demonstrates that no triable issue of material fact exists and that it is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

**DISCUSSION**

1. *Disability Discrimination*

Jackson's first and third causes of action alleged disability discrimination in violation of the ADA and of the FEHA. "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . ." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. (*Ibid.*) Second, if the plaintiff establishes a prima facie case, the employer may rebut the presumption of discrimination by producing evidence that the adverse employment action was taken for a legitimate nondiscriminatory reason. (*Id.* at pp. 355–356.) Third, if the employer meets its burden of producing evidence of a legitimate nondiscriminatory reason, the plaintiff then bears the burden to show with evidence that the employer's proffered reason was actually a pretext for discrimination, and the plaintiff may offer other evidence of discriminatory motive. (*Id.* at p. 356.) The ultimate burden of persuasion on the issue of discrimination remains with the plaintiff. (*Ibid.*)

Regus prevails at each step. First, Jackson cannot establish a prima facie case of discrimination under the ADA and the FEHA because she was not a "qualified individual" capable of performing her duties with or without a reasonable accommodation. Second, Regus met its burden of producing evidence that it had a legitimate nondiscriminatory reason for firing Jackson, namely her "indefinite" medical leave of absence. Third, Jackson did not show that Regus' proffered reason was a pretext for actual discrimination.

A. *Jackson Was Not a "Qualified Individual"*

The FEHA and the ADA both require Jackson to prove she is a "qualified individual" in order to prevail in her discrimination lawsuit. (Gov. Code, § 12940(a)(1); 42 U.S.C. § 12112(a); *Green v. State of California* (2007) 42 Cal.4th 254, 263 (*Green*).)[1]

As noted by the California Supreme Court, Jackson must produce evidence showing she "was able to do the job, with or without reasonable accommodation." (*Green, supra,* 42 Cal.4th at p. 262.) Otherwise, she is "exclud[ed] from coverage" under the FEHA.[2] (*Ibid.*) "[I]n disability discrimination actions, the plaintiff has not shown the defendant has done anything wrong until the plaintiff can show he or she was able to do the job, with or without reasonable accommodation." (*Id.* at p. 265.) The FEHA does not prohibit Regus from terminating Jackson who, "because of the employee's medical condition, is unable to perform [her] essential duties . . . even with reasonable accommodations." (Gov. Code, § 12940(a)(2).)

An "indefinite leave of absence" is not a reasonable accommodation under the ADA or the FEHA. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226–227 (*Hanson*) [" 'Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected.' "].) Likewise, as a matter of law, termination after a prolonged leave of absence is not a violation of the ADA. (*E.g.*, *Myers v. Hose* (4th Cir. 1995) 50 F.3d 278, 283; *Rogers v. International Marine Terminals, Inc.* (5th Cir. 1996) 87 F.3d 755, 759; *Samper v. Providence St. Vincent Med. Ctr.* (9th Cir. 2012) 675 F.3d 1233, 1239.)

---

[1] Under the ADA, it is illegal to discriminate against a "qualified individual on the basis of disability," defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." (42 U.S.C. §§ 12112(a), 12111(8).)

[2] "Although section 12940 proscribes discrimination on the basis of an employee's disability, it specifically limits the reach of that proscription, excluding from coverage those persons who are not qualified, even with reasonable accommodation, to perform essential job duties." (*Green, supra,* 42 Cal.4th at p. 262.)

Because Jackson was unable to do the job even with reasonable accommodation, she is not a "qualified individual with a disability" as required to pursue a claim under the FEHA and the ADA. Jackson could not perform the essential job duties because she could not perform any of her work at all. The first five medical certificates Jackson faxed to Regus stated that she was "totally incapacitated" and under the care of Dr. Moore. Each of these certificates indicated Jackson's inability to work was ongoing for two more months. As observed below, there was no identified return-to-work date. Regus thus had no way of knowing when or whether Jackson would return. Still, Regus kept Jackson in an employment status two months past the HR Handbook's six month medical leave of absence policy.

Jackson's argument, essentially, is that she could have performed her job duties if Regus had held her position "open" while she recovered from being "totally incapacitated" and under Dr. Moore's care. Yet, as noted above, that is not the law nor a reasonable accommodation. Regus was therefore not required to hold Jackson's position open "indefinitely" until her medical condition improved. (*Hanson, supra,* 74 Cal.App.4th at p. 226; *Myers, supra,* 50 F.3d at p. 283.) Hence, Regus did not "do anything wrong" in discharging Jackson pursuant to the HR Handbook's policy. (*Green, supra,* 42 Cal.4th at p. 265.)

Jackson says her leave was not "indefinite." Her rationale seems to be that each of the first five certificate assessed her disability for another two months and was therefore not indefinite. This is unpersuasive. The first certificate indicated that Jackson was totally incapacitated for a two-month period. So did the second, the third, the fourth, and the fifth. Thus, for 10 months (five certificates), not one of those certificates specified a return-to-work date. In contrast, when Dr. Moore actually did release Jackson for a return to work, that was handwritten on the sixth and final certificate, including a specific return date of June 10, 2009.

The failure to present facts establishing a prima facie discrimination case justifies the granting of a motion for summary judgment in an employment lawsuit. (*See Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203-204

(*Caldwell*).)  Jackson's own account demonstrates she was not a "qualified individual" under the ADA or the FEHA.  Therefore, she cannot prevail.  (*Green, supra,* 42 Cal.4th at p. 258.)

>   B.      *Regus Established a Legitimate Reason for Terminating Jackson*

Even assuming arguendo that Jackson established a prima facie case, Regus met its burden of producing evidence that it terminated Jackson for a legitimate nondiscriminatory reason.

Regus produced evidence that on June 9, 2008, Jackson left work, which turned into a prolonged absence of one year.  Regus further produced evidence that the HR Handbook, given to all employees, provided that "[a]fter 6 months of medical leave, if the Team Member is still not actively at work, they will be terminated from employment, subject to applicable federal and state law."  After nearly eight months of medical leave, Jackson was still not "actively at work."  According to the first 10 months of medical certificates, she was "totally incapacitated" with no specific return-to-work date.  Consequently, Regus' HR office in Addison discharged Jackson.  These and other facts produced by Regus satisfy its burden to make a " 'sufficient showing of a legitimate reason for discharge.' "  (*Hanson, supra,* 74 Cal.App.4th at p. 225.)

>   C.      *Jackson Did Not Show Pretext*

As in our case, "[i]f the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing."  (*Caldwell, supra,* 41 Cal.App.4th at p. 203.)

To avoid summary judgment, an employee claiming discrimination must offer "substantial responsive evidence" that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.  (*Martin v. Lockheed*

9

*Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735 (*Martin*); *Hanson, supra,* 74 Cal.App.4th at p. 225.)  That is, an employee's evidence must show " 'that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence.' " (*King, supra,* 152 Cal.App.4th at p. 433.) "[S]peculation cannot be regarded as substantial responsive evidence." (*Martin,* at p. 1735.)

In *Martin*, a 65-year old plaintiff brought an age and sex discrimination claim under the FEHA against Lockheed, which claimed it terminated her as part of a nondiscriminatory layoff triggered by adverse economic conditions.  To prove this reason was pretextual, the plaintiff marshaled a large amount of evidence suggesting she was fired due to "being old."  For instance, the plaintiff presented an internal memorandum referencing a "*preferred treatment for young people with specific critical skills.*" (*Martin*, *supra*, 29 Cal.App.4th at p. 1733.)  The plaintiff presented an additional internal memorandum stating "from now on, 1) managers were not to give salary increases to anyone over the age of sixty years; and 2) that no management position should be given to anyone over forty years of age." (*Id.* at p. 1734.)  The plaintiff  "added her own recollections that in 1975 her supervisor had told her that since she was over 40 she could not take leadership training, that in 1987 another supervisor told her that she was 'really "well preserved" for someone my age, that I had a "beautiful bod" ' (from which she received '[t]he idea . . . that he was telling me "you're old, but you look pretty good" ')." (*Ibid*.)  The plaintiff further pointed to a substantial number of age discrimination claims lodged against Lockheed since 1988.  (*Ibid*.)

Despite all of this evidence, the trial court granted Lockheed's motion for summary judgment.  The Court of Appeal affirmed, concluding that the issue was whether Martin had raised a triable issue of fact material to Lockheed's showing that on a specific occasion in early 1991 the plaintiff was reassigned by means of valid and fair procedures validly and fairly applied without regard to her age.  (*Martin*, *supra*, 29 Cal.App.4th at pp. 1734-1735.)  The court concluded that the plaintiff's "showing in

the trial court was insufficient to create more than speculation that Lockheed's showing was pretextual or false." (*Id*. at p. 1735.)

Therefore, did Jackson present "substantial responsive evidence" that Regus' reason for terminating her was untrue, or that Regus terminated her with a discriminatory motive? We conclude she did not meet this burden.

Jackson claims that Regus' claim of legitimate termination is a "fallacy" and "textbook pretext." Jackson's evidence consists of (1) the nearness in time between key events, and (2) the emails between and among Regus supervisors and HR staff. First, Jackson points out that (1) her written performance warnings came a few weeks *after* the filing of her workers' compensation claim, (2) a pay conflict arose *after* her jury duty, and (3) her termination came *after* settlement of her workers' compensation claim. Second, Jackson claims those emails prove her termination was motivated by animus. Some of these emails stated:

- "[W]e have pretty comprehensive notes here at the center that we keep with the intent of using for future write ups." May 14, 2008.

- "Do you see any grounds that we can use for termination here?" June 6, 2008.

- "We are still going with the same plan when she is ready to return correct?" July 29, 2008.

Jackson calls this a "blatant campaign" to terminate, motivated by her disability and/or in retaliation for filing her workers' compensation claim.

However, neither the timing nor the emails constitute substantial responsive evidence that Regus fired Jackson for any reason other than an administrative policy of discharging employees who after six months of absence are still unable to work.

Jackson's timing argument is speculative and cannot prove pretext. For example, while her termination occurred a few weeks after her workers' compensation claim settled, it also occurred nearly eight months after she unexpectedly left work. This nearly eight-month gap is critical, because it is the reason the HR department in Addison terminated her employment pursuant to a six-month medical leave of absence policy.

11

"Although temporal proximity, by itself, may be sufficient to establish a prima facie case of discrimination or retaliation, it does not create a triable fact as to pretext once the employer has offered evidence of a legitimate, nonprohibited reason for its action." (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 334 [affirming trial court's granting of summary judgment for employer as to employee's disability discrimination claims].)

Similarly, the emails are not evidence that Regus' reason for terminating Jackson was false or motivated by animus. First, the emails indicate annoyance with Jackson, but the rational inference is that her local supervisors were frustrated and seeking guidance from the HR department. Those supervisors faced a dilemma - how to handle a somewhat underperforming employee, who left work suddenly due to being "totally incapacitated," and who remained absent for many months with no indication of returning. The emails reflect these questions. Second, almost all of the emails occurred before Jackson left on June 9, 2008. The only emails after her departure were sent on July 29, 2008; those emails involve some confusion as to who she is, whether she was still employed, and what to do with a doctor's note that "puts her out until October." Terminating Jackson in late January 2009 was due to a legitimate business policy - she had been absent from work for nearly eight months with no return-to-work date in sight; the HR handbook allowed a six month leave of absence.

2. *Jackson's Remaining Claims Fail*

Our resolution of Jackson's disability discrimination claim resolves her remaining claims.

A. *Wrongful Termination*

Jackson's second and fourth causes of action - for wrongful termination in violation of public policy - are based on the same operative facts. Because Jackson's discrimination claim fails, she cannot prove Regus violated a public policy. When a plaintiff's "FEHA claim fails, his claim for wrongful termination in violation of public policy fails." (*Hanson, supra,* 74 Cal.App.4th at p. 229.)

12

B.    *Breach of Implied Contract*

Jackson's appellate brief combines arguments for breach of an implied contract and breach of the implied covenant of good faith and fair dealing. They are distinct and we address them as such.

Jackson and Regus dispute whether Jackson's employment was "at-will" (per the terms of both her signed application and signed offer letter), or whether the employee handbook created an implied contract giving Jackson additional rights, e.g., a six month medical leave policy and a progressive discipline policy.[3] Jackson's contract claim fails either way because there was no breach. Assuming arguendo there was an implied contract, Jackson failed to show that her termination violated the HR Handbook terms, which permitted a six month medical leave of absence. Regus accordingly was within its contractual rights to terminate her.

C.    *Breach of Implied Covenant of Good Faith and Fair Dealing*

There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything to deprive the other of its benefits. (*See Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 631.) However, that covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz, supra,* 24 Cal.4th at pp. 349-350.) Regus' termination was permitted by the terms of both Jackson's at-will employment agreement and Regus' medical leave of absence policy. Thus, Jackson's claim for breach of an implied covenant of good faith and fair dealing also falls.

---

[3]    An "employer's personnel policies and practices may become *implied-in-fact terms* of the contract between employer and employee. If that has occurred, the employer's failure to follow such policies when terminating an employee is a breach of the contract itself." (*Guz, supra,* 24 Cal.4th at p. 352.)

D.     *Infliction of Emotional Distress*

Jackson's emotional distress claim, intentional or negligent, arises out of Regus' alleged discriminatory conduct in terminating her.  The gravamen of her claim is that Regus improperly terminated her, causing her emotional distress.  But as discussed above, Regus acted properly in terminating Jackson and did not discriminate against her.  This claim therefore also falls.

Alternatively, an infliction of emotional distress claim must involve extreme and outrageous conduct.  (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209 [sustaining demurrer].)  The trial court correctly held that the emails between Jackson's supervisors and the HR department do not rise to the level of such conduct.

III.     *Conclusion*

Summary judgment was properly granted because Jackson was not able to perform the essential functions of her job with or without a reasonable accommodation.  Regus carried its burden to show a nondiscriminatory business reason for the termination.  Jackson has not carried her burden in proving that Regus' purported reason for terminating her was pretext for disability discrimination.  Finally, because Jackson's ADA and FEHA discrimination claims fail, her other claims also fail.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Regus Management Group, LLC.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



HEESEMAN, J.[*]

We concur:



CROSKEY, Acting P. J.



KITCHING, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice Pursuant to article VI, section 6 of the California Constitution.

15