Filed 2/21/25  Manos v. J Paul Getty Trust CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GEORGE MANOS,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>J PAUL GETTY TRUST,<br><br>     Defendant and Respondent. | B322283<br><br>(Los Angeles County Super. Ct. No. 21STCV07276) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Abrolat Law and Nancy L. Abrolat; Benedon & Serlin, Judith E. Posner, and Kian Tamaddoni for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Johnnie A. James, and Kathleen J. Choi for Defendant and Respondent.

Defendant and respondent the J Paul Getty Trust (the Getty) discharged plaintiff and appellant George Manos (Manos) after granting repeated extensions of a leave of absence due to a workplace injury.  Manos then sued the Getty alleging his former employer failed to provide a reasonable accommodation, failed to engage in the interactive process to determine a reasonable disability accommodation, and retaliated against him for engaging in protected activity.  The trial court granted summary judgment for the Getty.  We consider whether there is a dispute of material fact requiring trial on any of the aforementioned causes of action, as well as on Manos's derivative cause of action for wrongful termination in violation of public policy.

## I.  BACKGROUND

In February 2011, the Getty hired Manos as a heating, ventilation, and air conditioning (HVAC) technician at its Los Angeles campus.  The position's physical requirements entailed, among other things, standing, walking, squatting, bending, kneeling, twisting, climbing, driving, pushing/pulling, lifting 30-40 pounds, and carrying 20-30 pounds.  The "physical work environment" included duties inside, outside, in confined quarters and high places, along with exposure to fumes, odors, gases, dust and dirt.  Manos was interviewed for the position by John Donohoe, the Facilities Manager, Michael Galindo (Galindo), the Facility Engineer Supervisor, and Robert Margherita (Margherita), the HVAC Lead Technician.  The Getty hired Manos as a "HVAC Technician II," which meant he was responsible for, among other things, maintaining ice machines.

## A. *Manos Complains About His Co-Workers' Conduct*

On June 19, 2018, Manos complained to Veronica Leute (Leute), a Human Resources Coordinator, about his treatment at the hands of Galindo, Margherita, and a third employee. Among other things, Manos described feeling "threaten[ed]," "harassed," and "belittled"; he related that two days earlier, he felt "so stressed out" after a conversation with Galindo that he "began to have chest pains" and went to the hospital.

The following day, Leute alerted Michael Ruhr (Ruhr), a Senior Human Resources Specialist, to Manos's complaints by emailing him notes of her conversation with Manos. A day after that, Ruhr invited Manos to meet with him to discuss his concerns.

During the meeting, Manos described a number of incidents involving both Galindo and Margherita, some of which occurred several years earlier and one of which, according to Manos, caused him to seek treatment at a hospital (after performing a work assignment that aggravated a medical condition). Ruhr's notes of the meeting recorded Manos as stating he "does not feel harassed. He is not looking for any further action, he just wants to come to work and feel like he's not an 'irritant' to [Galindo] and [Margherita]. He would like to see more civility in the shop." Later that same day, Manos emailed Ruhr, thanking him for the meeting and advising he had a "productive" conversation with Galindo that helped "clear the air over [his] concerns."

Two days later, on June 28, 2018, Manos again met with Ruhr. Manos described a conversation he overheard the day before between Margherita and another employee about "what they would do if anyone ever retaliated against them"; during the

3

conversation, Manos heard Margherita say "he would make sure that he knew where the person lived." Manos advised Ruhr that although he did not know what Margherita meant by his comment, it nonetheless upset him. Manos also advised he was too upset to continue discussing the matter with Ruhr, who recommended he "take a sick day and go home" and that they would continue their discussion when he was "back at work and feeling better."

On July 3, and again on July 10, 2018, Ruhr emailed Manos asking to meet again to continue their discussion about Margherita's comments. Ruhr never received a response.

### B. Manos Goes on a Medical Leave of Absence Due to a Work Injury

Roughly a year later, on June 4, 2019, Manos fell off a ladder while performing preventive maintenance on an ice machine and fractured his left leg. Four days later, Manos submitted his first request for medical leave, in which he asked for an "indefinite" leave of absence. A doctor certified Manos was not "able to perform work of any kind" and estimated he might be able to return to work that November.

In a letter dated August 22, 2019, Ruhr explained to Manos that his 12 weeks of protected leave would soon expire and advised that the Getty, as an accommodation, would place him on a supplemental leave of absence with an expected return to work on December 3, 2019. Ruhr advised further that "the Getty cannot guarantee reinstatement during or after a supplemental leave and, depending on the nature of [his] job, [his] department may need to fill the position [he] held prior to [his] leave."

4

In November 2019, Manos, submitted a second medical leave request in which he indicated a continuing need for an "indefinite" leave. Manos's physician, Dr. Clinton Soppe, opined Manos was still unable to perform work of "any kind," but he estimated Manos would be able to return to work by the end of January 2020. The Getty advised Manos it was placing him on "inactive" status (without pay) and explained that "[if] an employee who has been placed on inactive status does not return to work at the Getty, within 90 days of being placed on inactive status, he or she will be separated from employment . . . ."

In January 2020, Manos submitted a third request for medical leave in which he requested an extension of his leave to April 30, 2020. Dr. Soppe again opined Manos was unable to perform any work and estimated Manos would be able to return to work at the Getty by the end of April.

Manos continued on inactive status, and Ruhr wrote to him in advance of the anticipated April return to work to advise the Getty "provides reasonable accommodations to employees with disabilities to permit them to perform the essential responsibilities of their jobs." Ruhr's letter asked Manos to detail any accommodations that he believed would allow him to carry out his job duties. Manos never responded to the request to identify accommodations.

In early April 2020, Manos submitted a fourth request for medical leave. In contrast to his third request, which asked for leave to a date certain in April, Manos's fourth request returned to requesting "indefinite" leave. Dr. Soppe again opined Manos was unable to work and estimated he would be able to return to work at the end of July.

Ruhr later wrote to Manos and requested he and his physician complete an "Interactive Process Questionnaire." Ruhr also asked Manos to see if his physician could "offer suggestions, if any, for the type of accommodation(s) that would allow you to perform the essential functions of your position and return to work." Attached to Ruhr's letter was the interactive process questionnaire and a copy of Manos's job description.

Less than two weeks later, in May 2020, Manos returned a signed copy of the job description and the completed questionnaire. In his portion of the questionnaire, Manos affirmed he had difficulty performing his job duties and stated: "I still can't stand upright, walk without a walker or cane, squat, kneel, bend, operate foot controls, climb, push, pull, lift or carry items 20 pounds or move distances." Manos advised that he was not requesting any accommodations "at this time," checked a box requesting "continuous leave," and advised the "end date" for his leave was "unknown."

In Dr. Soppe's portion of the questionnaire, he affirmed Manos had a physical impairment (a tibial plateau fracture in the left leg) that limited a major life activity. Dr. Soppe checked a box characterizing Manos's impairment as "temporary" and stated the expected duration of the impairment was "12-18 months." Based on the attached description of Manos's job duties, Dr. Soppe affirmed Manos could not perform the following functions: "climbing, squatting, bending/walking for extended time periods." Although he opined Manos could not perform his job with accommodations, Dr. Soppe at the same time recommended accommodations in the form of "[n]o climbing at this point or excessive bending/squatting."

6

*C.*     *The Getty Terminates Manos's Employment*

Ruhr interpreted the completed interactive process questionnaire as a request for an indefinite leave because defendant's physician did not know for certain when or if Manos would be able to return to work—and it was expected to be 12 to 18 months before he *might* return.  Because he considered a request for unlimited leave to be an unreasonable accommodation, Ruhr recommended to his manager that Mano's employment be terminated.  His manager agreed with the recommendation, and Ruhr sent a letter, dated June 22, 2020, to Manos terminating his employment with the Getty.  The letter explained the termination decision was ultimately based on the results of the interactive process questionnaire, which indicated Manos would not be able to return to work in the "foreseeable future."

In February 2021, eight months after his termination, Manos sued the Getty for violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.[1]) and other alleged wrongs.[2]  Manos's FEHA causes of action averred the Getty retaliated against him for engaging in protected conduct (e.g., raising complaints about misconduct in the workplace by Galindo and Margherita) (§ 12940, subd. (h)), failed to accommodate his disability (§ 12940, subd. (m)), and failed to engage in the interactive process (§ 12940, subd. (n)).  Based in

---

[1]     Undesignated statutory references that follow are to the Government Code.

[2]     Manos also sued Galindo and Margherita.  In October 2021, Manos accepted those defendants' statutory offers of compromise.

7

part on these alleged FEHA violations, Manos also averred the Getty wrongfully terminated him in violation of public policy.[3]

### D. The Getty's Motion for Summary Judgment

The Getty moved for summary judgment, arguing Manos's FEHA causes of action for failure to accommodate and failure to engage in the interactive process failed as a matter of law for two reasons.

First, in the period after he was terminated, Manos repeatedly and consistently admitted he remained unable to work with or without an accommodation. In September 2020, for instance, Manos signed and certified as true and complete an "Activities and Capabilities Questionnaire" for the Standard Insurance Company in which he stated, "I am still not fully recovered from the work injury and cannot stand upright, walk long distances without a walker/cane, squat, kneel, bend, climb, push, pull, lift or carry items over 20 pounds without assistance or losing my balance." Manos also stated on the questionnaire that he did not believe he would be able to return to his occupation as a HVAC technician—or return to work in any occupation—and stated, "I can no longer work as a HVAC technician because of my physical disability. I was an HVAC technician for over 35 years and can no longer do this job because of the physical requirements." At his deposition in July 2021, Manos testified his physical health had not improved to the point where he could resume work as a HVAC technician and that his

---

[3]     Manos's other causes of action are not at issue in this appeal.

physician was "not sure" when he could return to work because "[h]e's never seen damage to a leg like this before."

Second, the Getty argued there were no job openings between May and October 2020 for which Manos was qualified that did not require, at a minimum, bending and the ability to walk extended distances. During that period there were only seven positions that did not require bending and extended walking, but each of those positions required professional qualifications, skills, or work experience Manos did not possess.

As for Manos's FEHA retaliation claim, the Getty contended it was entitled to judgment as a matter of law because there was no evidence establishing a causal link between the concerns Manos raised in June 2018 and his termination two years later. The Getty also argued it had a legitimate reason for terminating Manos's employment: his inability to return to work as a HVAC technician or to qualify for an open position.[4]

The Getty supported its motion with declarations from Ruhr, Ruhr's manager, Galindo, and Margherita, excerpts from transcripts of the depositions of Manos and the aforementioned declarants, Manos's responses to written discovery requests, and an August 2020 qualified medical evaluation of Manos—which concluded he was "unable to return to his usual and customary occupation as an HVAC Technician due to the physical demands of his job including weight bearing, squatting, kneeling and climbing ladders . . . ." The medical evaluation concluded Manos was "most amenable to a sedentary job" and recommended "no

---

[4] Because the predicate claims were infirm, the Getty argued Manos's cause of action for wrongful termination in violation of public policy should be dismissed.

lifting more than 10 pounds to the waist and no more than 5 pounds overhead."

Manos's opposition to the Getty's motion for summary judgment conceded as undisputed he made multiple requests for "indefinite" medical leave prior to his termination, his failure to respond to Ruhr's inquiry about accommodations shortly before his termination, and his post-termination testimony that he remained unable to perform his duties as a HVAC technician. But he maintained there were still several disputed issues of fact precluding entry of summary judgment in the Getty's favor.

First, Manos argued Dr. Soppe's statements on the interactive process questionnaire released him to return to work in May 2020 with certain "temporary" restrictions that would be "lifted in 12 to 18 months"; in Manos's view, this was a request for an accommodation just one month before the Getty terminated him.

Second, Manos argued the Getty improperly terminated him instead of offering him a vacant Security Officer position, which he could perform with the limitations identified by his physician. In support of his position, Manos argued Sergio Grijalva (Grijalva) was hired by the Getty as a security officer without any prior security experience, was trained by the Getty, and could perform his job from a wheelchair.

Finally, as to his retaliation claim, Manos changed his theory of liability. His opposition argued the Getty retaliated against him, not because of his reports of misconduct by Galindo and Margherita, but because of his purported request for a disability accommodation in the interactive process questionnaire he and Dr. Soppe completed.

10

In reply, the Getty argued the only accommodation requested by Manos was additional leave because, immediately following his injury and for years afterwards, he was unable to perform his duties as an HVAC technician. The Getty disputed Manos's contention that his physician declared him ready to return to work in May 2020, observing Dr. Soppe had unambiguously declared Manos unable to work from June 4, 2019, (the date of the accident) through July 31, 2020. In addition, the Getty disputed Manos's characterization of Grijalva's deposition testimony about the physical requirements for a Getty security officer.[5] That position required, among other things, standing, walking, squatting, bending (neck and waist), twisting (neck and waist), climbing, pushing/pulling, lifting 50 pounds and carrying 25 pounds. Concurrent with its reply, the Getty filed written evidentiary objections to Manos's declaration and to the declaration from his attorney, along with several of the exhibits attached thereto.

The day before the summary judgment hearing, one of Manos's lawyers filed a supplemental declaration in support of his opposition to the summary judgment motion. Attached to the declaration was an excerpt from the "rough draft" of an uncertified transcript of Dr. Soppe's deposition, which was taken two days earlier. At his deposition, Dr. Soppe testified that when

---

[5]     In support, the Getty submitted excerpts from Grijalva's deposition, a clarifying declaration by Grijalva, and a declaration by John Gale, a 22-year veteran of the Getty Security Department. In addition, the Getty submitted the job qualifications for the security officer position, which was open during a portion of Manos's medical leave of absence.

11

he estimated in the interactive process questionnaire that Manos would return to work in 12 to 18 months, the start date for that estimate was from when Manos suffered his leg injury in June 2019; in other words, when Dr. Soppe wrote in May 2020 that he estimated Manos's impairment would last 12 to 18 months, he expected Manos to return to work "[in] the next one to six months" or between June and November 2020.[6]

E.      *The Trial Court Grants Summary Judgment for the Getty*

The trial court held the summary judgment hearing on April 8, 2022. During the hearing, the court pressed Manos's counsel to address the May 2020 interactive process questionnaire, a document the court considered to be "very significant." The court queried: "[W]hy does that [document] not foreclose your client's claim of a failure to accommodate when he specifically says . . . he is not requesting any accommodations whatsoever, and then later on in that same document, the doctor says that he's not aware of any accommodations that could be provided to the plaintiff, and it's go[ing] to be another up to 18 months before it's possible that your client goes back to work[?]" When Manos's counsel responded by raising its submission—just the day before—of excerpts from the uncertified transcript of Dr. Soppe's deposition, the court stated it had not seen the document and observed, "I don't know where under [Code of Civil Procedure section] 437c you get to do that." The court additionally remarked that the date on which Dr. Soppe estimated Manos

---

[6]      The Getty did not file a written objection to Manos's submission of Dr. Soppe's deposition testimony.

12

could return to work was "quite indefinite" without "considering this late-filed stuff" that the court said it was "discounting."[7] Counsel for the Getty argued that even if the doctor's testimony about the May 2020 questionnaire was considered and credited, it was still negated by Manos's subsequent admission at his July 2021 deposition that he was then still unable to return to work as an HVAC technician.

After taking the matter under submission, the trial court issued a ruling granting summary judgment to the Getty.[8]

The court found the Getty was entitled to judgment as a matter of law on the failure to accommodate and failure to

---

[7] At the hearing, Manos's counsel observed it had sought unsuccessfully to continue the trial and summary judgment motion deadlines so that certain discovery could be completed. The appellate record indicates Manos's ex parte requests to continue the deadlines were made shortly before his opposition to the Getty's motion for summary judgment was due. The record, however, does not include the requests themselves or the trial court's ruling on those requests, and Manos does not contend the trial court erred in denying those requests.

[8] The trial court sustained "many" of the Getty's objections to Manos's declaration. Among other things, the court sustained objections to Manos's assertion he was at all times qualified and able to work as a security officer and that in May 2020 Dr. Soppe released him to return to work with certain restrictions. The court also sustained an objection to the submission by Manos's counsel of a Getty document showing a vacant security officer position during Manos's medical leave of absence and the attorney's accompanying assertion Manos was qualified for the position. Manos does not challenge any of the trial court's evidentiary rulings, express or implicit, in this appeal.

13

engage in the interactive process causes of action because the undisputed facts showed Manos was not able to perform the essential functions of his job, was not requesting any accommodation other than continued leave, and his return date was unknown. The trial court did not credit or discuss the excerpts from the uncertified transcript of Dr. Soppe's deposition submitted on the eve of the hearing. Instead, it viewed the interactive questionnaire from May 2020 as indicating Manos would not be able to return to work until "November 2021, more than two and a half years after his accident." The court additionally observed Manos's claim that he should have been offered a position as a security officer was not made in the complaint and offered for the first time in his opposition to the Getty's motion.

The court ruled in the Getty's favor on Manos's retaliation cause of action because there was "no evidence" of a causal connection between his complaints of workplace harassment in June 2018 (the protected activity alleged in the complaint) and his termination two years later. Finally, because Manos failed to raise a triable issue of material fact with regard to his other causes of action, the trial court found the Getty was entitled to judgment as a matter of law on Manos's derivative cause of action for wrongful termination in violation of public policy.[9]

---

[9] The trial court also found that "myriad procedural defects" in Manos's opposition provided "a sufficient basis by themselves to grant the MSJ." Among other things, Manos's response to the Getty's statement of undisputed facts was "replete with objections and argument and purports to both dispute and not dispute facts. It frequently cites to Manos'[s] declaration without

14

## II. DISCUSSION

The trial court correctly concluded the Getty was entitled to judgment as a matter of law. No trial was required on the failure to accommodate and failure to engage in the interactive process causes of action because the undisputed evidence showed the Getty reasonably accommodated Manos's request for medical leave for more than a year following his injury and reasonably terminated his employment based on evidence he would not be able to return to work in the foreseeable future as an HVAC technician and was not qualified for any other positions available at the time. No trial was required on Manos's retaliation cause of action because there was no evidence from which retaliatory intent could be inferred; instead of a relatively short period separating the protected conduct and the adverse employment action, two years had elapsed between Manos's complaints about Galindo and Margherita and the Getty's decision to terminate his employment. Finally, no trial was required on the cause of action

---

providing a page, paragraph or line citation. Other facts are purportedly disputed, but with no citation to *any* admissible evidence. [Manos's response] also improperly states 'Manos does not oppose,' whatever that means. [¶] In any event, [Manos] essentially concedes his [response] is irrelevant. [Manos]'s Opposition Brief completely fails to reference his [response]. One wonders why [Manos] even bothered to provide the [response]." (Footnotes omitted.) As we discuss *post*, our resolution of this appeal makes it unnecessary to address Manos's argument that his opposition was not so deficient as to warrant entry of summary judgment in favor of the Getty.

15

for wrongful termination in violation of public policy because the predicate contentions for such a claim were not viable.

### A.    *Summary Judgment and the Standard of Review*

Summary judgment is appropriate only "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment.  (*Aguilar v Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]  Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law."  (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.)  We "liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1037; see also *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423 [we review the ruling of the trial court, not its rationale].)

16

B. *The Getty Was Entitled to Judgment as a Matter of Law on the Failure to Accommodate and Engage in the Interactive Process Causes of Action Because Manos's Request for Indefinite Leave Beyond a Year Was Not a Reasonable Accommodation*

FEHA requires employers "to make reasonable accommodation for the known physical or mental disability of an . . . employee." (§ 12940, subd. (m)(1).) "The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 373.)

FEHA also requires employers "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (§ 12940, subd. (n).) "To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." (*Nealy*, *supra*, 234 Cal.App.4th at 379.)

Under California law, authorizing medical leave can be a reasonable accommodation. "When the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery, holding a job open for an employee on a leave of absence or extending a leave . . . may be a reasonable accommodation provided that the

17

leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation, and does not create an undue hardship for the employer. . . ." (Cal. Code Regs. tit. 2, § 11068, subd. (c); see also *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263.) An employer is not obligated, however, to hold open a position indefinitely for an employee on medical leave, to reassign the employee, or to create a new position for him or her. (Cal. Code Regs. tit. 2, § 11068, subd. (c); *Nealy, supra*, 234 Cal.App.4th at 377-378 ["A finite leave of absence may be a reasonable accommodation to allow an employee time to recover, but FEHA does not require the employer to provide an indefinite leave of absence to await possible future vacancies"]; *Hanson, supra*, 74 Cal.App.4th at 226-227 ["Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected"]; see also *Dark v. Curry County* (9th Cir. 2006) 451 F.3d 1078, 1090 [recovery time of unspecified duration may not be a reasonable accommodation when the employee will not be able to return to his former position and cannot state when and under what conditions he could return to work].)

Here, it was undisputed that the only accommodation Manos requested following his workplace accident in June 2019 was medical leave, which the Getty repeatedly granted—ultimately for about a year. During the period between his injury in June 2019 and his discharge in June 2020, Manos submitted four requests for leave, three of which requested "indefinite" leave—including his fourth and final request. During this same period, Manos's physician repeatedly certified Manos was unable

18

to perform any work and the evidence showed there were no positions available at the Getty for which Manos was qualified other than as a HVAC technician. It was also undisputed that when Ruhr asked Manos in the spring of 2020 to identify accommodations that would allow him to return to work, Manos never responded. In addition, when Manos completed his portion of the interactive questionnaire, he advised he was not requesting any accommodations "at this time" and was requesting only "continuous leave." Furthermore, it was undisputed that following the termination of his employment with the Getty, Manos affirmed more than once (in the September 2020 insurance company questionnaire and again in July 2021 deposition testimony) that he remained unable to work. Under such circumstances, a reasonable juror could not find that the Getty failed to accommodate Manos or failed to engage in the interactive process.

Based on the uncertified deposition testimony of Dr. Soppe, however, Manos argues the Getty failed to engage in the interactive process in good faith by failing to contact Dr. Soppe and inquire about his seemingly contradictory or ambiguous statements in the portion of the interactive process questionnaire he completed. The argument fails because the deposition testimony was never properly before the trial court: it was not argued in Manos's opposition brief or presented in his response to the Getty's statement of undisputed facts. (*Olson v. La Jolla Neurological Assocs.* (2022) 85 Cal.App.5th 723, 739 [affirming summary judgment for defendant because plaintiff's theories of "apparent authority and ratification depend on controverted facts not put in issue below"]; *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 ["'possible theories

19

that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal'"] *City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1493 [holding a party waives a theory on appeal "when he fails to include the underlying facts in his separate statement of facts in opposing summary judgment"]; see generally *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337.)  To be sure, the trial court had discretion to consider the untimely submitted deposition excerpts (upon a showing of good cause for the delay (Code Civ. Proc., § 437c, subd. (b)(2); *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765)), but the trial court declined to exercise that discretion as demonstrated by its comments on the record at the summary judgment hearing and the absence of any discussion of the untimely submitted deposition testimony in the court's later ruling.[10]

---

[10]     Manos does not challenge the propriety of any of the court's evidentiary decisions, including its refusal (whether express or implied) to consider the excerpts from the uncertified transcript of Dr. Soppe's deposition submitted the day before the summary judgment hearing.  Even if he had challenged the refusal to consider the deposition excerpts, the challenge would fail.  (See, e.g., *Bozzi, supra,* 186 Cal.App.4th at 765-766 [trial court did not abuse its discretion when it refused to consider a "surrebuttal" brief and a supplemental expert declaration filed on the day of the summary judgment hearing]; *Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 320-321.)

*C. The Getty Was Entitled to Judgment as a Matter of Law on the Retaliation Cause of Action Because There Was No Substantial Evidence of a Causal Link*

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz, supra*, 36 Cal.4th at 1042.) "In the summary judgment context, "'the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory [or retaliatory] factors.'" [Citation.] If the employer meets this initial burden, the plaintiff must "'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with discriminatory [or retaliatory] animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination [or retaliation] or other unlawful action.'" [Citation.]" (*Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 457; see also *Sangster v. Paetkau*, 68 Cal. App. 4th 151, 162-163 ["where . . . the defendant has made a sufficient showing to establish a prima facie case in his or her favor, in order to avert summary judgment the plaintiff must produce substantial responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing"].)

Courts have observed that proof of retaliation often depends on circumstantial evidence because retaliation consists

of "subjective matters only the employer can directly know, i.e., his attitude toward the plaintiff and his reasons for taking a particular adverse action." (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 713.) As a result, "'[t]he causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision."'" (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615.) The adverse employment action should ordinarily follow "within a relatively short time" after the employee's protected activity. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69; see also *Clark County School District v. Breeden* (2001) 532 U.S. 268, 273 [causation will be inferred from timing alone only if the proximity is "'very close'" and adverse action taken 20 months later by itself suggests no causality at all].)

After Manos raised his complaints against Galindo and Margherita with Leute in June 2018, Ruhr met with Manos twice and, following their second meeting, invited Manos via email to continue their discussion about his complaints. Nothing in the record indicates Manos accepted Ruhr's invitation, otherwise pursued his original complaints against Galindo and Margherita, or raised any additional complaints against his two coworkers (or anyone else) at the Getty during the 11 months between his second meeting with Ruhr and his workplace injury. While on medical leave for the following year, there were also no additional complaints by Manos against his coworkers or his employer. In view of the two years that elapsed between his complaint to the Getty's Human Resources Department and his termination,

during which time he declined to pursue his initial complaint any further (despite being invited to do so) and made no additional complaints, there is no substantial evidence that would permit a juror to find a causal link between any protected conduct by Manos and his subsequent termination.

> ### D. *Manos's Derivative Cause of Action for Wrongful Termination*

Because we conclude Manos failed to establish any genuine issues of material fact that could reasonably support a decision in his favor on his FEHA failure to accommodate, failure to interact, and retaliation causes of action, his cause of action for wrongful termination in violation of public policy necessarily fails. (*Arteaga v. Brinks, Inc.* (2008) 163 Cal.App.4th 327, 355 ["The wrongful termination claim is . . . based on the FEHA's prohibition of physical disability discrimination.  As a result, the wrongful termination claim fails for the same reasons as the FEHA claim"].)

DISPOSITION

The judgment is affirmed. The Getty is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

HOFFSTADT, P. J.

MOOR, J.